**Warren D. SNYDER, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent,**

**Susan Rice–Snyder, Intervenor.**

**No. 97–3307.**

United States Court of Appeals, Federal Circuit.

Feb. 26, 1998.

William O. Carlisle, Running Springs, CA, for petitioner.

Lydia Kay Griggsby, Attorney, Commercial Litigation Branch, U.S. Department of Justice, Washington, DC, for respondent. With her on brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Sharon Y. Eubanks, Deputy Director. Of counsel was Murray Meeker, Office of General Counsel, Office of Personnel Management, Washington, DC.

Edwin C. Schilling, III, Aurora, CO, for intervenor.

Before NEWMAN, MICHEL, and PLAGER, Circuit Judges.

PLAGER, Circuit Judge.

Petitioner, Warren D. Snyder, a former civil servant, appeals the decision of the Merit Systems Protection Board, DE–0831–94–0401–I–2, dated February 28, 1997, affirming the Office of Personnel Management's ("OPM") final decision to provide his former spouse a pro-rata share of his retirement annuity and a survivor annuity under the Civil Service Retirement System ("CSRS"). On appeal, Mr. Snyder argues that the Board applied the wrong law to this case and that OPM's decision is contrary to the United States Constitution. We hold that the Board applied the correct law and reached the proper conclusion consistent with existing law.

## BACKGROUND

Warren D. Snyder married Susan M. Rice–Snyder on June 15, 1989, in Florida. According to Mr. Snyder, they separated not long after, with Ms. Rice–Snyder living in Texas and Mr. Snyder in California. On or

about January 28, 1994, Mr. Snyder separated from civil service. At the time of this separation, Mr. Snyder held the position of Air Commander with the Air Force Reserves at March Air Force Base in California. Although he remained married at the time of his separation from civil service, Mr. Snyder indicated on his CSRS retirement application that he desired a reduced annuity payable only during his lifetime (plus an up-front lump sum payment), thereby eschewing a survivor benefit for his then-wife, Ms. Rice–Snyder. The application itself, however, noted that "[i]f you are married at retirement, you cannot choose this type of annuity without your spouse's consent." Accordingly, Mr. Snyder submitted a "Spouse's Consent to Survivor Election" form, but without Ms. Rice–Snyder's signature. Apparently realizing this deficiency, Mr. Snyder wrote in the block for his wife's signature—"Not available-Unable to locate."

By letter dated April 26, 1994, OPM denied Mr. Snyder's request for a reduced annuity with a lump-sum payment under CSRS because he failed to provide a signed waiver from his spouse of record. To preserve Ms. Rice–Snyder's rights, and consistent with its practice, OPM instead reduced Mr. Snyder's retirement annuity to provide her with a maximum survivor annuity.

On May 19, 1994, Ms. Rice–Snyder received a Decree of Divorce from the District Court of Travis County in Texas, where she was then living, even though Mr. Snyder had apparently never lived there with her. Despite the fact that Mr. Snyder had not been served and had not entered an appearance in the case, the district court nonetheless exercised personal jurisdiction over him in accordance with the Uniformed Services Former Spouses Protection Act, 10 U.S.C. § 1408 (1994). The Texas divorce decree specifically awarded Ms. Rice–Snyder a pro-rata share of Mr. Snyder's CSRS retirement annuity and 100 percent of the maximum possible survivor annuity.

On May 23, 1994, Mr. Snyder submitted a second request to OPM for his self-only retirement annuity with lump-sum payment claiming that, because Ms. Rice–Snyder could not be located, her waiver was unobtainable. OPM responded by letter dated May 27, 1994, informing Mr. Snyder that Ms. Rice–Snyder's whereabouts were known and reasserted that her consent was required to grant his request. *Compare* 5 C.F.R. § 831.614 * (requiring spousal consent in order to receive self-only annuity) *with* 5 C.F.R. § 831.618 (permitting spousal consent to be waived if "whereabouts cannot be determined"). Accordingly, on June 24, 1994, OPM issued a reconsideration decision affirming its prior decision.

Three days later, Mr. Snyder was granted a Judgment of Dissolution by the Superior Court of California, County of San Bernardino, effective November 19, 1994. Ms. Rice–Snyder did not enter an appearance, and the decree was entered by default. The decree purported to confirm Mr. Snyder's separate property interest in his military and CSRS benefits, "including survivor benefits." With this decree in hand, Mr. Snyder appealed OPM's reconsideration decision to the Board. Before the Board could decide the case, however, OPM rescinded its decision in order to consider the effect of the California divorce decree, thereby divesting the Board of jurisdiction.

Ms. Rice–Snyder informed OPM, by letter dated July 14, 1994, that she refused to give her consent to Mr. Snyder's request for the self-only annuity with lump-sum payment. She also entered a special appearance before the California Superior Court for the purpose of setting aside the California divorce decree based on the prior Texas decree. Her motion to that effect was granted by the California court on December 21, 1994, thereby setting aside both the default judgment and the dissolution. The California court also found, without providing any basis, that the Texas court lacked personal jurisdiction over Mr. Snyder and for that reason ruled that "any monies that are owed on the Texas judgment are not enforceable in California."

---

* All citations to the Code of Federal Regulations are to the current version unless indicated otherwise.

OPM then determined that it would enforce the Texas divorce decree and grant Ms. Rice–Snyder a survivor annuity along with a pro-rata share of Mr. Snyder's monthly annuity. Mr. Snyder again requested OPM to reconsider its decision in light of the California court's finding that the Texas court lacked personal jurisdiction over him. OPM declined. Mr. Snyder sought review from the Board.

The Board, before reaching the merits, concluded that there was a conflict between two potentially applicable regulations—5 C.F.R. §§ 838.134 and 838.224—dealing with the validity of court orders pertaining to retirement annuities. The Board concluded that in this case § 838.224 controls because it is the more specific and the more recent of the two. Under that regulation, the Board affirmed OPM's decision on the ground that the Texas decree was "a court order acceptable for processing that ... has not been amended, superseded, or set aside" by the California order. *See* 5 C.F.R. § 838.224(b). Mr. Snyder now appeals that decision. We have jurisdiction over the final decision of the Board pursuant to 28 U.S.C. § 1295(a)(9) (1994).

## DISCUSSION

Our review of decisions by the Board is tightly circumscribed by statute. The decision of the Board must be affirmed unless it is found to be:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;

(2) obtained without procedures required by law, rule or regulation having been followed; or

(3) unsupported by substantial evidence.

5 U.S.C. § 7703(c) (1994); *Rosete v. Office of Personnel Management*, 48 F.3d 514, 516 (Fed.Cir.1995).

If an employee is married at the time of his retirement, the employee's annuity will be reduced to provide a survivor annuity for the spouse, and the alternative form of annuity with lump-sum payment will be disallowed unless the spouse consents. *See* 5 U.S.C. § 8339(j)(1) (1994); 5 C.F.R. § 831.2203(c).

It is undisputed that Mr. Snyder was married at the time of his retirement; he so indicated on his retirement application. There is an exception in cases in which the spouse's whereabouts cannot be determined. *See* 5 C.F.R. § 831.2203(c); 5 C.F.R. § 831.618. However, it is also undisputed that Ms. Rice–Snyder's whereabouts were known. Therefore, this exception does not apply. Because she has refused to consent, OPM's decision to refuse to grant Mr. Snyder's request is in accordance with this law.

Section 8339 of Title 5, United States Code, is not the only "law" implicated in this case. Part 838 of Title 5 of the Code of Federal Regulations requires OPM to "comply with court orders, decrees, or court-approved property settlement agreements in connection with divorces ... that award a portion of the former employee's ... retirement benefits or a survivor annuity to a former spouse." 5 C.F.R. § 838.101(a)(1). The regulations are quite specific, "OPM must honor the clear instructions of the court." *Id.* at § 838.101(a)(2). The court instructions, however, "must be specific and unambiguous." *Id.*; *see also Turner v. Office of Personnel Management*, 60 M.S.P.R. 55, 62 (1993). OPM is neither qualified nor obligated to resolve disputes about the import of state divorce decrees. *See Turner*, 60 M.S.P.R. at 62 ("We find it would be administratively burdensome to require OPM to go behind the express language of each state court order."). If there is a "[d]isagreement between the parties concerning the validity or the provisions of any court order [that disagreement] must be resolved by the court." 5 C.F.R. § 838.101(a)(2). OPM's task is "purely ministerial" with respect to court ordered property settlements. *Id.* Thus, if a court order specifically and unambiguously divested Ms. Rice–Snyder of any rights in Mr. Snyder's annuity, OPM would be required to comply. Mr. Snyder claims that the California order does just that.

We need not rely on these general principles to resolve this dispute. OPM has promulgated regulations that specifically deal with cases involving challenges to court orders. The threshold question is which one

applies. The Board concluded that § 838.224 applies, while Mr. Snyder argues that § 838.134 governs this case. The competing provisions are set forth below:

§ **838.224 Contesting the validity of court orders.**

(a) [A] ... retiree who alleges that a court order is invalid must prove the invalidity of the court order by submitting a court order that—

(1) Declares the court order submitted by the former spouse is invalid; or

(2) Sets aside the court order submitted by the former spouse.

(b) OPM must honor a court order acceptable for processing that appears to be valid and that the former spouse has certified is currently in force and has not been amended, superseded, or set aside, until OPM receives a court order described in paragraph (a) of this section or a court order amending or superseding the court order submitted by the former spouse.

§ **838.134 Receipt of multiple court orders.**

(a) Except as provided in paragraph (c) of this section, for court orders affecting employee annuities or awarding former spouse survivor annuities, in the event that OPM receives two or more court orders acceptable for processing—

\* \* \* \* \* \*

(2) When two or more court orders relate to the same former spouse, separated spouse, or child abuse creditor the one issued last will be honored.

\* \* \* \* \* \*

(c) With respect to issues relating to the validity of a court order or to the amount of payment—

(1) If the employee, separated employee, retiree, or other person adversely affected by the court order and former spouse submit conflicting court orders from the same jurisdiction, OPM will consider only the latest court order; or

(2) If the employee, separated employee, retiree, or other person adversely affected by the court order and former spouse submit conflicting court orders from different jurisdictions—

(i) If one of the court orders is from the jurisdiction shown as the employee's, separated employee's, or retiree's address in OPM's records, OPM will consider only the court order issued by that jurisdiction; or

(ii) If none of the court orders is from the jurisdiction shown as the employee's, separated employee's, or retiree's address in OPM's records, OPM will consider only the latest court order.

■ On its face § 838.134, subsection (c)(2) would appear to control: it provides that when conflicting court orders from different jurisdictions are submitted, the one from the home jurisdiction of the employee/retiree will be the only order OPM considers. This would give determinative authority to the California decree. The difficulty with that decree, however, is apparent—it does not purport to be a court order addressing the question of entitlement to annuity payments.

OPM regulations make this point clear. The touchstone for application of § 838.134 is that OPM must receive "two or more *court orders acceptable for processing.*" *Id.* (emphasis added). In order for a court order to be "acceptable for processing," it must "meet[ ] the requirements of subpart C of this part." 5 C.F.R. § 838.103. Subpart C, §§ 838.301–838.306, in turn, requires that a court order is not a court order acceptable for processing unless it, *inter alia,* "expressly divides the employee annuity," *id.* at § 838.303, and "direct[s] OPM to pay the former spouse directly," *id.* at § 838.304. The California order did neither. As such it does not qualify as a "court order[ ] acceptable for processing." Accordingly, section 838.134 is not applicable to this case.

■ We conclude, as did the Board, that § 838.224 governs this case, rather than § 838.134. Mr. Snyder is unquestionably a "retiree who alleges that a court order is invalid," namely the Texas order, on the ground that the Texas court lacked personal jurisdiction over him. Section 838.224 is thus triggered. In order to prove invalidity then,

Mr. Snyder must "submit[ ] a court order that—(1) Declares the court order submitted by the former spouse is invalid; or (2) Sets aside the court order submitted by the former spouse." 5 C.F.R. § 838.224(a). The California order does neither. In fact, it does just the opposite—it sets aside the prior *California* dissolution. The order specifically refused to modify the Texas judgment because the court found it lacked jurisdiction. The only effect it had on the Texas decree was that it prohibited Ms. Rice–Snyder from enforcing the judgment in California because of the court's due process concerns. The California order did not "amend[ ] or supersed[e]" the Texas order. *See id.* at § 838.224(b); *cf. Newman v. Love*, 962 F.2d 1008, 1011 (Fed.Cir.1992) (court order dividing marital property did not "modif[y]" a previously entered divorce decree, which simply dissolved the marriage). Accordingly, OPM was required to honor the Texas order, which it did.

■ Mr. Snyder also argues that this court must consider the question of whether the Texas decree violates the United States Constitution. He does not argue that the regulations themselves are inconsistent with the Constitution or even with the governing statute. Instead, Mr. Snyder asks us to decide whether "the Texas Judgment, as applied to property, [is] Constitutional under the Fourth [sic] Amendment, United States Constitution...." *Brief for Petitioner* 12. Neither the Board nor this court is required or even equipped to answer that question. That claim must be brought in the first instance in a trial court. This court is ill-equipped to develop in the first instance the necessary facts to determine whether Mr. Snyder had sufficient contact with Texas to satisfy due process. While the Board is equipped to make this type of fact-finding, the regulations put that burden squarely in the state courts. *See* 5 C.F.R. § 838.124 ("Employees and retirees are responsible for—(a) Raising any objections to the validity of a court order *in the appropriate State court;* and (b) Submitting all disputes with former spouses *to the appropriate State court* for resolution." (emphasis added)). Accordingly, we decline Mr. Snyder's invitation to decide that issue.

## CONCLUSION

The Board properly concluded that § 838.224 governed Mr. Snyder's challenge to the validity of the Texas decree. Because the California order did not satisfy the requirements of that section, however, the OPM was correct in its decision to abide by the prior Texas decree, which explicitly gave Ms. Rice–Snyder a pro-rata share of his annuity and a survivorship benefit. We disagree with the Board's conclusion that there was a conflict in this case between §§ 838.134 and 838.224 because the California order is not a "court order[ ] acceptable for processing" under part 838, a prerequisite for invocation of § 838.134. That error was harmless, however, because the Board reached the correct ultimate conclusion. Accordingly, the decision of the Board is

*AFFIRMED.*

## COSTS

Each party to bear its own costs.