William H. PERRY, II, Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT, Respondent.

No. 00–3097.

United States Court of Appeals, Federal Circuit.

March 20, 2001.

Bruce M. Merrill, Bruce M. Merrill, P.A., of Portland, ME, argued for petitioner.

Janene M. Marasciullo, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With her on the brief were David M. Cohen, Director; and Todd M. Hughes, Assistant Director. Of counsel was Murray M. Meeker, Attorney, Office of the General Counsel, Office of Personnel Management, of Washington, DC.

Before SCHALL, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and GAJARSA, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

A retired federal employee challenges the Office of Personnel Management (OPM)'s determination of the portion of his pension to which his former wife is entitled pursuant to a state divorce decree. The Merit Systems Protection Board (Board) upheld OPM's award, and we affirm.

I

The petitioner William J. Perry, II, an airplane pilot for the Customs Service, married Linda D. Perry in May 1974. The Perrys were divorced by a Florida court on November 19, 1986. In February 1987, Perry married Linda J. Amidon. Perry retired from the Customs Service in January 1998. On his retirement application, he elected a reduced annuity "with maximum survivor annuity" for his spouse Linda J. Amidon Perry.

The divorce decree provided a detailed division of the couple's property. Paragraph 32 stated in pertinent part:

> The Wife is hereby awarded one-half of the value of the Husband's pension for the period of time from May 17, 1974

when the parties married through and including the date of this divorce. This award shall be paid to the Wife by the Office of Personnel Management, Attn: C.S.A. (Allotment Branch) . . .

a. This is a Qualified Domestic Relations Order (Q.D.R.O.) . . .

b. The pension administrator shall treat the Wife as the participant's surviving spouse and provide a Qualified Joint & Survivor Annuity (Q.J.S.A.) and/or Qualified Pre-retirement Survivor Annuity (Q.P.S.A.) in the event that the Husband dies.

c. The Wife shall begin receiving payments no later than the Husband's earliest retirement age.

d. This court retains jurisdiction to amend this order for the purpose of establishing or maintaining its qualification as a Qualified Domestic Relations Order and to carry out its award of part of the retirement/pension plan to the Wife.

In January 1987, OPM received a copy of the divorce decree from Linda Perry.

Shortly before and after Perry retired, he disagreed with OPM regarding Linda Perry's share of his pension. OPM told him that it intended to pay her fifty percent of an amount calculated by applying to his retirement annuity a fraction consisting of the number of months they were married over his months of service. Perry contended that she was either not entitled to any or only to a smaller part of both his retirement and survivor annuities. OPM determined that Linda Perry was entitled to "50% of 150 months of marriage divided by 319 months of Federal service or 23.51% of your retirement benefit" of $4757.00 monthly, or $1118.37. OPM also stated that Linda Perry was "eligible for a maximum survivor annuity." In its final decision, OPM "awarded ... Linda Perry 23.51% of your Civil Service Retirement pension as well as the maximum survivor annuity."

The Board affirmed. In his initial decision, which became final when the Board denied review of it, the administrative judge ruled that the Florida divorce decree was "a qualifying court order" under the governing statute and regulations (discussed below) because it "awards, with particularity, a fixed portion of the appellant's retirement benefits to the intervenor based on the length of their marriage and states that such portion will be paid to her by OPM. 5 C.F.R. § 838.1004(b). And I find that the court order awarded the intervenor a survivor annuity inasmuch as it provides for her to be treated as the surviving spouse if the appellant dies." *Perry v. Office of Pers. Mgmt.*, No. AT–0831–99–0006–I–1, slip op. at 4–5 (M.S.P.B. Mar.12, 1999) (Initial Decision). He held that the Florida judge's oral statements and order at the hearing on the decree did not support Perry's contrary interpretation of the decree.

## II

A. Under 5 U.S.C. § 8345(j)(1), annuity payments otherwise payable to a retired employee shall be paid to the employee's former spouse

[i]f and to the extent expressly provided for in the terms of—

(A) any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation[.]

This provision "authorizes [OPM] to comply with an appropriate court decree of divorce or property settlement of an employee who is entitled to payments pursuant to the Civil Service Retirement System." *Donlan v. Office of Pers. Mgmt.*, 907 F.2d 1132, 1133 (Fed.Cir.1990).

"To implement this statute, OPM has promulgated regulations that define when an order of divorce or property settlement is a 'court order acceptable for processing.' *See* 5 C.F.R. §§ 838.101(b)(1); 838.103; 838.301–838.306 (1997). The pertinent regulations specify that, to qualify for pro-

cessing by OPM, the court order must identify the retirement system under which the annuity exists and expressly state the portion to which the former spouse is entitled under the court order. *See* 5 C.F.R. § 838.303; *see also* 5 C .F.R. § 838.305 (portion must be stated as a fixed amount, percentage, or fraction, or formula calculable solely from face of court order). In the event OPM receives an application from a former spouse for benefits pursuant to a divorce decree, and the application fails to comply with the regulations defining an order acceptable for processing, OPM notifies the applicant of the specific reasons for disapproving the application. *See* 5 C.F.R. § 838.424 (1997). The applicant then has an opportunity to cure any error in the application and to reapply for benefits." *Rosato v. Office of Pers. Mgmt.*, 165 F.3d 1377, 1378 (Fed.Cir. 1999).

The regulations provide that "[g]enerally, OPM must comply with court orders, decrees ... in connection with divorces ... of employees," 5 C.F.R. § 838.101(a)(1), and that

> [i]n executing court orders under this part, OPM must honor the clear instructions of the court. Instructions must be specific and unambiguous. OPM will not supply missing provisions, interpret ambiguous language, or clarify the court's intent by researching individual State laws. In carrying out the court's instructions, OPM performs purely ministerial actions in accordance with these regulations. Disagreement between the parties concerning the validity or the provisions of any court order must be resolved by the court. ·

5 C.F.R. § 838.101(a)(2).

Other provisions of the regulations similarly instruct that any dispute or question regarding the interpretation of the divorce decree should be presented to the divorce court for resolution. 5 C.F.R. §§ 838.222(a)(2)(vi), (c)(1)(iv), (c)(2)(v); 838.423(a)(1)(vi), (a)(2)(vii); 838.722 (c)(1)(iii), (c)(2)(iv)(B).

The "Guidelines" in the regulations "For Interpreting State Court Orders Dividing Civil Service Retirement Benefits" include the following:

> 3. Orders that award a portion of the "value" of an annuity as of a specific date before retirement, without specifying what "value" is, will be interpreted as awarding a portion of the annuity equal to the monthly annuity rate at the time of retirement times a fraction, the numerator of which is the number of months of "creditable service" or service worked as of the date specified and the denominator of which is the total number of months as of the time of retirement of "creditable service" or service worked, whichever term is used in the court order. (See III.C. of these Guidelines.)

5 C.F.R. Part 838, Subpart J, App. A, I.C.3.

Subparagraph 4 provides for the same formula using creditable service for interpreting "[o]rders that contain general language awarding a specified portion of a Federal employee's 'retirement benefits' as of a specified date before retirement, but do not specify whether OPM should use 'creditable service' or 'service worked' as of the date specified to complete the computation." 5 C.F.R. Part 838, Subpart J, App. A, I.C.4.

■ B. Although Perry apparently contends that the divorce decree was not a "qualifying" court order because it awarded his wife half of the "value" of his pension without specifying what that value was, subparagraph I.C.3 above specifically deals with that situation and explains how OPM will interpret such an order. In calculating Linda Perry's share of Perry's retirement annuity, OPM used that formula. It ruled that Linda Perry was entitled to one-half of the amount produced by applying to Perry's annuity a fraction whose numerator was the number of months the Perry's had been married (150) and whose denominator was the number of months of his federal service (319), or

47.02% of his annuity. The use of this formula was an appropriate and reasonable method of implementing the award in the divorce decree.

As noted earlier, the decree awarded Linda Perry half of "the value of the Husband's pension for the period of time from May 17, 1974 when the parties married through and including the date of this divorce" (November 10, 1986). In other words, the court awarded her one-half of the value of the pension that had been earned during the marriage. Since the amount of the pension directly depended upon the length of his service, basing her award on the comparative time they were married and his total federal service fairly reflected the share of his retirement annuity that the Florida court awarded her.

█ Perry points out that the amount of his retirement annuity reflected (1) the contributions he made to it in the years following his divorce and (2) the higher grade (and therefore salary) he had upon retirement than he had at the time of his divorce. He contends that basing the award to Linda Perry upon the amount of his annuity at retirement "ignored controlling state law in attempting to apportion Petitioner's retirement annuity by awarding his former spouse 23.51% of his *total* annuity, rather than 50% of the value of his pension at the time of divorce, as specified in the Divorce Decree." He asserts that "under controlling Florida law, the valuation of a vested retirement plan cannot include *any* contributions made after the original judgment of dissolution."

As he recognizes, however, that Florida rule, and the two Florida cases he cites, *Boyett v. Boyett*, 703 So.2d 451, 452 (Fla. 1997) and *Howerton v. Howerton*, 491 So.2d 614, 615 (Fla. 5th DCA 1986), deal solely with vested pension rights. Perry's pension, however, was not vested at the time of the divorce but was contingent on his satisfying the requisite age and years of service requirements.

The divorce decree's reference to the "value of the Husband's pension for the period of time" of the marriage on its face

indicated that (1) the amount of the pension would first be determined—and by definition that had to be as of the date it began, (2) the portion of it attributable to the period of the marriage would be determined and (3) Linda Perry would receive half of that amount. These are precisely the calculations OPM made, as provided for in its "Guidelines."

In its regulations, OPM states that

[i]n executing court orders ... OPM ... will not ... clarify the court's intent by researching individual State laws. In carrying out the court's instructions, OPM performs purely ministerial actions in accordance·with these regulations. Disagreement between the parties concerning the validity or the provisions of any court order must be resolved by the court.

5 C.F.R. § 838.101(a)(2). As this court has pointed out, "OPM is neither qualified nor obligated to resolve disputes about the import of state divorce decrees ... OPM's task is 'purely ministerial' with respect to court ordered property settlements." *Snyder v. Office of Pers. Mgmt.*, 136 F.3d 1474, 1477 (Fed.Cir.1998).

█ As shown, OPM's calculation of Linda Perry's share of Perry's retirement annuity complied with the divorce decree. OPM was not required to delve into the details and intricacies of Florida law to determine whether application of its formula in this case was inconsistent with that law. If Perry believed that the divorce decree did not permit OPM's interpretation of it because that interpretation violated Florida law, it was incumbent on him to seek clarification or modification of the decree by the Florida court. Paragraph 32 of the decree provided for such action, since subparagraph d provided: "This court retains jurisdiction to amend this order for the purpose of establishing or maintaining its qualification as a Qualified Domestic Relations Order and to carry out its award of part of the retirement/pension plan to the Wife." As Perry

admitted at oral argument, he did not seek such relief.

*Levy v. Office of Personnel Management,* 902 F.2d 1550 (Fed.Cir.1990), upon which Perry relies to support his argument that OPM was required to analyze and apply Florida law, does not help him. Levy retired from federal service for disability after six years of service, and began receiving immediate disability payments. Levy and his wife were divorced some years later, and the divorce decree provided that Levy's "civil service retirement are [sic] found to be community property upon husband obtaining the age of sixty-two (62). One-half of all such benefits due after husband reaches the age of sixty-two (62) are [sic] awarded to wife as her sole and separate property and one-half is awarded to husband as his sole and separate property." *Id.* at 1551 (footnote omitted).

When Levy turned sixty-two, OPM awarded his former wife half of his monthly benefits. If Levy's retirement had not been for disability, his benefits at sixty-two would have been substantially less than the disability benefits he received (because of his short period of service).

The Board upheld OPM's division of the retirement benefits between Levy and his former spouse, but this court reversed. It held that "the Board's interpretation of the Divorce Judgment was contrary to California law and is undeserving of deference." *Id.* at 1552. The court applied a California Supreme Court decision that treated disability retirement as consisting of two components: "(a) compensation to the serviceman for loss of earning power and personal suffering, and (b) retirement support. The latter component, to the extent that it is attributable to employment during marriage, is community property." *Id.* at 1553. It held that under that case "the amount Levy receives each month over and above what would have been received as retirement benefits is Levy's separate property; the remainder, that is, the amount Levy would have received as retirement benefits had he not retired for

disability reasons, is divisible community property and therefore subject to apportionment upon Levy's reaching 62." *Id.*

The court

conclude[d] that the Board's decision is contrary to controlling California law. We hold that only that portion of Levy's monthly compensation (after reaching age 62) attributable to Levy's longevity of service is community property and subject to division under the Divorce Judgment. Because the Board based its apportionment on the full amount of Levy's monthly compensation, most of which is attributable to Levy's disability, the Board's decision is not in accordance with California law and must therefore be set aside under 5 U.S.C. § 7703(c)(1).

*Id.* at 1554 (footnote omitted).

*Levy* thus held that the major portion of Levy's retirement was not community property under California law because it was compensation for loss of earning power and personal suffering, and therefore was not "subject to division under the Divorce Judgment." In the present case, however, it is undisputed that all of Perry's retirement annuity benefits are part of his "pension" under the divorce decree. The question is what portion of those benefits the decree awarded to his former wife, *i.e.,* what was the "value" of those for the period of the marriage. We decline to extend *Levy* to the significantly different situation of the present case an extension that would require OPM to engage in the very "researching individual State laws" that the regulations stated OPM would not do.

Moreover, OPM's Guidelines in its regulations provide that although ordinarily OPM "will not research, interpret, or apply State law regarding community or marital property rights or divisions, [it] will not divide disability retirement benefits when such a division would be contrary to State law unless the order expressly directs division of 'disability' benefits." 5 C.F.R. Part 838, Subpart J, App. A, VI.A.1, 2. Unlike the present case, *Levy* involved disability

retirement. This court's inquiry into state law in *Levy* thus was in accord with OPM's regulatory Guidelines; a similar inquiry in this case would be inconsistent with them.

C. Perry contends that because the statement in Paragraph 32(a) of the divorce decree that "this is a Qualified Domestic Relations Order" did not include the additional language that 5 C.F.R. § 838.302(a) requires, the Board should not have even considered the decree. That subsection provides that any court order so stating "is not a court order acceptable for processing unless the court order expressly states that the provisions of the court order concerning CSRS or FERS benefits are governed by this part" and that such "court order must expressly—(i) Refer to part 838 of title 5, Code of Federal Regulations, and (ii) State that the provisions of the court order concerning CSRS or FERS benefits are drafted in accordance with the terminology used in this part." 5 C.F.R § 838.302(a); *see also* the virtually identical provisions in 5 C.F.R. § 838.803. Perry argues that because the divorce decree did not so state, it was not "acceptable for processing" and that OPM therefore should not have considered it.

The additional language that that provision requires for court orders to be "acceptable for processing" was added to the regulations in 1993—approximately seven years after the divorce decree and six years after OPM received a copy of the decree. 57 Fed.Reg. 33,570, 33,580 (July 29, 1992). Prior to the 1993 amendment, the regulation describing "[q]ualifying court orders" stated only that

(a) A former spouse is entitled to a portion of an employee's retirement benefits only to the extent that the division of retirement benefits is expressly provided for by the court order. The court order must divide employee retirement benefits, award a payment from employee retirement benefits, or award a former spouse an annuity.

(b) The court order must state the former spouse's share as a fixed amount, a percentage or a fraction of the annuity, or by a formula that does not contain any variables whose value is not readily ascertainable from the face of the order or normal OPM files.

(c)(1) For purposes of payments from employee retirement benefits, OPM will review court orders as a whole to determine whether the language of the order shows an intent by the court that the former spouse should receive a portion of the employee's retirement benefits directly from the United States.

5 C.F.R. § 831.1704 (1992). The regulations also stated the conditions under which a "court order is not a qualifying court order" that do not apply here because the Perry's marriage was terminated after May 7, 1985 and Perry did not retire before May 7, 1985. 5 C.F.R. § 831.1704(d) (1992).

The 1993 amendments of the regulation specify which portions apply retroactively and which prospectively. The regulations are divided into subparts A through K. The amendments state that

(1) Subparts A through I of this part [§§ 838.101–838.933] apply only to court orders received by OPM on or after January 1, 1993.

(2) Subpart J [§§ 838.1002–838.1018] applies only to court orders received by OPM before January 1, 1993.

5 C.F.R. § 838.101(c). (Subpart K is not relevant here for it deals with court orders under the Child Abuse Accountability Act.) Similarly, the regulation states that Subpart J "contains the rules applicable to court orders filed under procedures in effect prior to the implementation of this part. These rules continue to apply to court orders received by OPM before January 1, 1993." 5 C.F.R. § 838.102(a)(6).

██ Subsection 302(a), upon which Perry relies, is part of Subpart C, and therefore applies "only" to court orders OPM received on and after January 1, 1993. OPM received the Perry divorce decree in 1987. Subsection 302(a) therefore does

not cover it. The only portion of Part 838 that applies to it is Subpart J, which does not prohibit the use of the characterization "Qualified Domestic Relations Order." *See* 5 C.F.R. Subpart J, §§ 838.1002—838.1018. To the contrary, Appendix A to Subpart J states that OPM will honor Qualified Domestic Relations Orders to the extent that they comply with the Civil Service Retirement System. 5 C.F.R., Part 838, Subpart J, App. A. Thus, contrary to Perry's contention, characterizing the decree as a "Qualified Domestic Relations Order" did not render it invalid or unacceptable for processing.

Indeed, applying subsection 302(a) retroactively to the Perry divorce decree would be inconsistent with the purpose of requiring particular language in divorce decrees. That requirement was designed to aid courts and parties in formulating property division provisions that would be acceptable to OPM and would carry out the court's and the parties' intentions. The regulations also contain a number of "Model Paragraphs" providing "recommended language for use in court orders attempting to divide employee annuity." 5 C.F.R. Part 838, Subpart F, App. A.; *see also* 5 C.F.R. Part 838, Subpart I, App. A. "By using [that] language ... the court, attorneys, and parties will know that the court order will be acceptable for processing and that OPM will treat the terminology used in the court order in the manner stated in the appendix." 5 C .F.R. §§ 838.601(c)(2); 838.901(c)(2).

When the Florida court entered the divorce decree in 1986, it had no reason to anticipate that seven years later OPM would impose a new requirement without which the court's language would be unacceptable, or to try to include language that would satisfy that future requirement. Thus, the purpose of specifying the language to be included in a court order that described a divorce decree as a "Qualified Domestic Relations Order"—to enable the court to draft such an order that would be acceptable to OPM—would not be served by making the regulatory requirement retroactive, since the court would have had no reason or basis for meeting the requirement when it entered the decree years before.

### III

Perry also contends that OPM improperly awarded his former wife a survivor's annuity and in any event that the annuity was too large. As noted, OPM's final decision "[a]ward[ed] ... Linda Perry ... the maximum survivor annuity."

■ It is doubtful that this issue is ripe for review. The question of Linda Perry's entitlement to a survivor's annuity will arise only if Perry predeceases her and only when that occurs. Moreover, it is unclear whether OPM's award of "the maximum survivor annuity" was intended to give her the total annuity payable upon Perry's death (to the exclusion of Perry's present wife), or an annuity based on the 23.51% of Perry's retirement annuity she now receives. *See Disabled Am. Veterans v. Gober*, 234 F.3d 682, 690–91 (Fed.Cir. 2000) (A controversy must be ripe for judicial resolution in order to prevent the courts ... from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967))).

Under the Spouse Equity Act, codified at 5 U.S.C. § 8341(h)(1), a "former spouse of a deceased employee ... is entitled to a survivor annuity ... if and to the extent expressly provided for ... in ... any decree of divorce ... or any court order or court-approved property settlement agreement incident to such decree." 5 U.S.C. § 8341(h)(1). "[M]agic words' are not necessary to entitle a former spouse to a survivor annuity under section 8341(h)." *Fox v. Office of Pers. Mgmt.*, 100 F.3d 141, 143 (Fed.Cir.1996). In *Fox*, we held that a separation agreement provided for a sur-

vivor's annuity even though it did not use those words, but provided only for coverage under a "Survivors Benefit Plan."

Perry argues that the divorce decree here is ambiguous about whether Linda Perry is entitled to a survivor's annuity, and that in any event it provides such annuity only if he died before retirement. He states that his lawyer told him that that was its intent.

■ · We agree with the Board, however, that the decree provides Linda Perry with a survivor's annuity, whether or not Perry dies before retirement. She was given one-half "the value" of Perry's "pension" for the time the parties were married. The decree required OPM to provide Linda Perry "a Qualified Joint & Survivor Annuity (Q.J.S.A.) and/or Qualified Pre-retirement Survivor Annuity (Q.P.S.A.) in the event that the Husband dies." Nothing in this unambiguous language suggests the limitations that Perry would read into it, including the claim that the divorce decree limited Linda Perry's survivorship annuity to half of the amount Perry had contributed to his retirement fund as of the date of the divorce. The Florida hearing transcript does not reveal any inconsistency with the decree; to whatever extent there may be inconsistency, however, Perry's recourse lies with the Florida court. *See Goosby v. Lawrence,* 711 So.2d 577, 578 (Fla.Dist.Ct.App.1998) (remanding an appeal from a final divorce judgment because "[i]t is well-settled law that the trial court's oral pronouncement must confirm to the written judgment"); *see also Ulano v. Anderson,* 626 So.2d 1112 (Fla.Dist.Ct. App.1993).

As in the case of the dispute over the portion of his retirement annuity that the decree awarded to his former wife, if Perry believed that the decree does not provide a survivor's annuity for his former wife, he should have requested clarification or interpretation of the decree by the Florida court.

## CONCLUSION

The decision of the Board is *AFFIRMED.*