NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ALAN W. CARTER,**
*Petitioner*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent*

---

2015-3137

---

Petition for review of the Merit Systems Protection Board in No. CH-0831-14-0619-I-1.

---

Decided: September 15, 2015

---

ALAN W. CARTER, St. Louis, MO, pro se.

ANTHONY F. SCHIAVETTI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., FRANKLIN E. WHITE, JR.

---

Before DYK, TARANTO, and HUGHES, *Circuit Judges.*

PER CURIAM.

Alan Carter was a federal employee at the time that he and Karen Kay Carter divorced. We will call them by their first names for simplicity. A state-court "domestic relations order" at the time provided expressly for an allocation of any "former spouse survivor annuity" that Karen might receive upon Alan's death, referring expressly to the statutory provision authorizing such an annuity, 5 U.S.C. § 8341(h). The order awarded Karen the "maximum possible former spouse survivor annuity under the Civil Service Retirement System in the same amount to which Karen Kay Carter would have been entitled if the divorce had not occurred." S.A. 68.

Years later, Alan retired. A few years after that, he submitted to the Office of Personnel Management an amended state-court domestic relations order, which stated that his ex-wife should receive a lower amount of any former spouse survivor annuity, keyed to the amount of time (seven years) they were married. S.A. 59. Karen and Alan agreed that this lower amount was what they had originally intended years earlier. But OPM concluded that, because Alan had retired, it was barred by statute and regulation from processing the request to change the survivor annuity based on the amendment—a change that would have reduced the annuity-funding amounts that OPM was withholding from retirement benefits being paid to Alan. The Merit Systems Protection Board agreed with OPM that the amended order was ineffective because it was issued after Alan had retired. We affirm.

## BACKGROUND

While working for the Army, Alan was married to Karen. Their marriage, which began on March 26, 1988, ended in divorce on March 3, 1995. On that date, the Circuit Court of St. Louis County, Missouri, entered a decree of dissolution, which incorporated the terms of a marital settlement agreement signed by the parties. The

marital settlement agreement provided that, to comply with OPM regulations, the court would enter a domestic relations order detailing Karen's right to receive a portion of Alan's eventual federal pension benefits.

The state court entered the domestic relations order on June 8, 1995. It awarded Karen a portion of Alan's monthly benefit and, separately, provided for Karen to receive a former spouse survivor annuity under federal law:

> Under section 8341(h)(1) of Title 5, United States Code, Karen Kay Carter is awarded the maximum possible former spouse survivor annuity under the Civil Service Retirement System in the same amount to which Karen Kay Carter would have been entitled if the divorce had not occurred.

S.A. 68. On November 11, 1995, OPM notified the parties by letter that it had processed the papers, including the June 1995 domestic relations order, and that, if Karen survived Alan, she would receive a survivor annuity equal to 100% of the surviving spouse benefit payable under the Civil Service Retirement System.

Mr. Carter retired fifteen years later, on October 22, 2010. In 2011, based on the June 1995 domestic relations order, OPM calculated the maximum survivor annuity for Karen and, to cover the cost, began deducting $397 from the monthly retirement payments to Alan. Believing OPM's determination to be erroneous, Alan turned to the Missouri state court, and on March 13, 2013, he obtained an amended domestic relations order, which modified the June 1995 order. As relevant here, the amended order reduced the apportionment of the former spouse survivor annuity from the "maximum possible" to a "prorata [sic] share." S.A. 59. Alan filed the new order with OPM to try to effectuate the change.

OPM notified Alan that, under 5 C.F.R. § 838.806, it could not process the request. The problem, OPM explained, was that the amended order was issued after Alan retired and was a modification of the first order dividing marital property.

When Alan filed an appeal with the Merit Systems Protection Board, Karen intervened to state her agreement with Alan. As the Board later described her position, Karen agreed that "the amended [domestic relations order] properly reflected the intent of the parties' original settlement agreement," S.A. 7, a description that refers to the March 1995 agreement, but not the June 1995 domestic relations order. The administrative judge reversed OPM's decision, ruling that 5 C.F.R. § 838.806(b) permits processing of an amended order that is submitted before *either* the employee's retirement *or* the employee's death.[1]

On OPM's petition for review, the Board agreed with OPM that 5 U.S.C. § 8341(h)(4) and 5 C.F.R. § 838.806(b) clearly dictate that "a court order issued after an annuitant's retirement or death and modifying the first order dividing the marital property is not acceptable for processing." S.A. 8–9. It therefore reversed the administrative judge's ruling and affirmed OPM's refusal to process Alan's 2013 submission.

Alan appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(9) and 5 U.S.C. § 7703(b)(1).

---

[1] The administrative judge also thought it significant that the amended domestic relations order modifies the June 1995 domestic relations order and not the March 1995 marital settlement agreement. Alan does not rely on that ground here, which in any event lacks merit.

DISCUSSION

We must affirm the Board's decision unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; obtained in violation of procedures required by law, rule, or regulation; or unsupported by substantial evidence. 5 U.S.C. § 7703(c); *Addison v. Dep't of Health & Human Servs.*, 945 F.2d 1184, 1186 (Fed. Cir. 1991).

We first reject Alan's contention that the June 1995 domestic relations order is ambiguous. The above-quoted language, from section 5 of the June 1995 order, is clear in providing for "the maximum possible former spouse survivor annuity" under the relevant federal retirement system. S.A. 68. Section 5 is entitled "former spouse survivor annuity"; it refers to 5 U.S.C. § 8341(h)(1); and it is the only provision of the June 1995 order that addresses the "former spouse survivor annuity" at all, let alone with the clarity required by federal law. 5 U.S.C. § 8341(h)(1); *see* 5 C.F.R. §§ 838.101(a)(2), 838.912(c)(1). Although Alan cites other provisions of the June 1995 order in arguing that the order is unclear, those provisions involve benefits other than a former spouse survivor annuity.

Thus, only one provision of the June 1995 order addresses the subject, and it uses OPM's own model language, *see* 5 C.F.R. part 838, subpart I, appendix A, paragraph 701, in providing for an award of "the maximum possible survivor annuity." That language is unambiguous, certainly in the respect at issue here: Karen was awarded the maximum possible amount. And that language is determinative, and is not made unclear by any retirement booklets or annuity statements with inconsistent monthly contribution amounts that OPM may have sent to Alan. Reply Br. at 2; *see Hayward v. Office of Pers. Mgmt.*, 578 F.3d 1337, 1345 (Fed. Cir. 2009).

The Board correctly concluded that OPM was barred by statute and regulation from processing Alan's change request based on the 2013 amended domestic relations order because that order modified the June 1995 order and, as is undisputed, it issued after Alan had already retired.  5 U.S.C. § 8341(h)(4) provides:

> For purposes of this subchapter, a modification in a decree, order, agreement, or election referred to in paragraph (1) of this subsection shall not be effective—
>
> (A) if such modification is made after the retirement or death of the employee or Member concerned, and
>
> (B) to the extent that such modification involves an annuity under this subsection.

OPM's implementing regulation, 5 C.F.R. § 838.806(b), adds:

> For purposes of awarding, increasing, reducing, or eliminating a former spouse survivor annuity, or explaining, interpreting, or clarifying a court order that awards, increases, reduces or eliminates a former spouse survivor annuity, the court order must be—
>
> (1) Issued on a day prior to the date of retirement or date of death of the employee; or
>
> (2) The first order dividing the marital property of the retiree and the former spouse.

The statute clearly states that a modification issued after the federal employee's retirement is ineffective to the extent it involves a former spouse survivor annuity like the one at issue here.  The regulation states that such a modification must either be the first order dividing marital property or issue before the employee retires.

There is no substantive difference between the statute and regulation that is material to the present case.

Here, the March 2013 amended domestic relations order was not the first order dividing marital property. It followed the June 1995 order, which certainly divided marital property (putting aside what happened before June 1995). It was issued in March 2013, well after Alan retired in October 2010. And it modified the June 1995 order specifically regarding the annuity at issue. We have held, on facts similar to those involved in this case, that changing the former spouse survivor annuity from "the maximum possible" to the pro rata share earned during marriage is a modification under § 8341(h)(4) because it reduces the amount the former spouse is entitled to receive. *See Moran v. Office of Pers. Mgmt.*, 310 F.3d 1382, 1384–85 (Fed. Cir. 2002). And the conclusion stands even if the amended order's substantive modification is deemed a "clarification." 5 C.F.R. § 838.806(b) (encompassing orders that explain or clarify an earlier order); *Moran*, 310 F.3d at 1385.[2]

Our conclusion is not altered by whether the Carters intended in 1995, or agree now, that Karen should receive a pro rata share of, rather than the maximum possible, survivor annuity. OPM's role is limited to the essentially ministerial task of giving effect to the actual language of

---

[2] It is immaterial for the legal issue presented whether, as Alan asserts, the June 1995 order was an impermissible modification of the March 1995 marital settlement agreement. Pet. Br. at 6–7. In any event, the March 1995 marital settlement agreement expressly reserved issuing a later domestic relations order to divide federal retirement benefits. In this situation, the June 1995 order, issued long before Alan's retirement, was effective. *See* 5 U.S.C. § 8341(h)(4); *Vaccaro v. Office of Pers. Mgmt.*, 262 F.3d 1280, 1287 (Fed. Cir. 2001).

the domestic relations order.  *Moran*, 310 F.3d at 1384. For the same reasons, OPM cannot be faulted for not evaluating the merits of Alan's claim that the June 1995 domestic relations order violated Missouri law.  *See* 5 C.F.R. § 838.101(a)(2); *Perry v. Office of Pers. Mgmt.*, 243 F.3d 1337, 1340–41 (Fed. Cir. 2001).  Thus, the Board properly affirmed OPM's refusal to consider the March 2013 amended domestic relations order because it was issued too late to have the desired effect of modifying the June 1995 domestic relations order.

## CONCLUSION

For the foregoing reasons, the judgment of the Board is affirmed.

No costs.

## **AFFIRMED**