# Illinois Official Reports

## Appellate Court

---

*In re Marriage of Sanders*, 2016 IL App (1st) 143681

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF STELLA SANDERS, Petitioner-Appellant, and WILLIAM SANDERS, III, Respondent-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-14-3681 |
| Filed | September 20, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 91-D-02152; the Hon. Timothy P. Murphy, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Barclay Law Group, P.C., of Chicago (Lester L. Barclay and Rafael Taylor, of counsel), for appellant.<br><br>Bradford & Gordon, LLC, of Chicago (Mitchell B. Gordon and Maria A. Citino, of counsel), for appellee. |
| Panel | JUSTICE PIERCE delivered the judgment of the court, with opinion.<br>Justices Neville and Simon concurred in the judgment and opinion. |

**OPINION**

¶ 1     Petitioner Stella Sanders appeals from the circuit court's order denying her motion to reconsider a prior order denying Stella's petition to recalculate her monthly benefits from her ex-husband's retirement fund. Stella argues the circuit court erred in denying her petition where a recalculation of her monthly benefits was warranted and the proper calculation is a "reserved jurisdiction approach" discussed in *In re Marriage of Hunt*, 78 Ill. App. 3d 653 (1979) (*Hunt* formula). We affirm.

¶ 2                                        BACKGROUND

¶ 3     On August 31, 1994, the circuit court entered a judgment dissolving William and Stella Sanders's 26-year marriage. The judgment reserved the issue of the division of William's pension. On July 11, 1996, after a trial before Judge James G. Donegan, a supplemental judgment for dissolution was entered, finding the "pension of the Respondent through his employment with the United States Government is all marital property up until August 31, 1994," and that:

> "[t]he Petitioner is awarded one-half of [William's] pension benefits accrued as of August 31, 1994, said benefits to be divided pursuant to the same formula in assessing or ordering Qualified Domestic Relations Orders (QDRO), to wit: 50% of the accrued benefits for the period November 1, 1968 to August 31, 1994. Payment of said benefit shall commence when the pension goes into pay status."

¶ 4     In 2012, William retired from the Environmental Protection Agency (EPA) after 43 years of employment. William's pension is held by the Civil Service Retirement System and administered by the federal government's Office of Personnel Management (OPM). After his retirement, OPM sent William interim monthly annuity payments in the net amount of $3828.34 pending calculation of his full monthly benefits.

¶ 5     Sometime in 2012, Stella learned of William's retirement and "filed a request for the marital portion of the annuity payments" with the OPM. This request included a copy of the July 1996 court order. On September 6, 2012, OPM responded in a letter stating that "[b]y court order your marital share of your former spouse's retirement benefit is 50% of 322 months of service during the marriage divided by 532 months of Federal service or 30.26% of your spouse's retirement benefit. The marital share times your former spouse's gross annuity benefit of $8936 provides for a $2,704.03 monthly payment to you." Beginning October 1, 2012, OPM issued Stella monthly distributions of $2,704.03.

¶ 6     William requested an audit and review of the above calculations. On May 29, 2013, OPM issued a "Correction" stating:

> "By court order your former spouse's marital share of your retirement benefit is 50% of 303 months of service during the marriage divided by 44 years 4 months of Federal service or 28.478% of your retirement benefit as of August 31, 1994. The marital shares times your gross annuity benefit of $3567 provides for a $1,015.52 monthly payment to your former spouse not the $2704.03 erroneously awarded. ***
>
>     Your former spouse was due an annuity payment of $8,227.72 and was paid $21,891.80, an overpayment of $13,664.08 which we will refund to you in one time [*sic*] payment from your former spouse's monthly annuity benefit."

¶ 7 The parties do not dispute that OPM correctly revised the number of months of service during the marriage (303), the total number of months in service (532), the resultant fraction (303/532) or the revised marital share (1/2 (303/532) = 28.478%).

¶ 8 After receipt of the 2013 letter, Stella filed this postdecree "petition for payment of retirement benefits" in the circuit court of Cook County, contesting the reduction in her monthly payments. Stella argued that absent an order from the circuit court directing OPM to make corrections, OPM should be prohibited from correcting its own mistakes. Stella also argued that the 1996 supplemental judgment order is ambiguous because it does not state the exact amount of William's pension at the time the order was entered; therefore, the proper calculation for her monthly pension award is a "reserved jurisdiction approach" as discussed in *In re Marriage of Hunt*, 78 Ill. App. 3d 653 (1979). In Stella's petition she sought an order directing (1) William to provide documentation supporting the calculation of his gross annuity benefits since he retired, (2) William to provide documentation of Stella's marital share of his benefits since he retired, (3) William to reimburse Stella for any amounts of her share of his pension benefits that she has not received, and (4) an award of attorney fees.

¶ 9 In response, William argued that his retirement plan is a federal government plan exempt from the previsions of the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 *et seq.* (2006)) and managed by the OPM; according to OPM regulations Stella was required to follow procedures to apply for pension benefits; OPM's September 2012 letter miscalculated Stella's benefits based on 322 months of service during marriage where the marriage lasted only 303 months; therefore, OPM properly recalculated Stella's benefits; Stella has been provided the documentation she seeks; and, in the alternative, the 1996 judgment order is not ambiguous, and thus, the *Hunt* formula is not the proper calculation for Stella's monthly pension benefits.

¶ 10 After the hearing, on July 9, 2014, the circuit court entered a written order denying Stella's petition. The court found that "both parties stipulate that the fund at issue is a defined benefit plan and that the OPM properly calculated both the length of the parties' marriage and the length of WILLIAM's total service in determining his interest in the Plan," but what the parties dispute "is the gross monthly amount to which the calculation should be applied; *i.e.* whether the amount is that which WILLIAM would have received if he had retired on the date of dissolution, or the gross monthly amount he would receive on the date of his retirement." The circuit court held that a nonparticipant spouse's interest is designated by federal law according to OPM regulations, which define "prorata share" as "one-half of the fraction whose numerator is the number of months of Federal civilian and military service that the employee performed during the marriage and whose denominator is the total number of months of Federal civilian and military service performed by the employee,'" and this formula "mirrors Judge Donegan's findings and order in the Supplemental Judgment." The court also found that because William's benefits plan is a public plan exempt from ERISA, the *Hunt* formula is not applicable.

¶ 11 Stella filed a motion to reconsider, arguing that the court failed to address OPM's two letters to Stella that listed different amounts for William's gross annuity benefits and that OPM did not provide supporting documents to explain their calculation. Stella argued that, if the trial court had considered these issues, the court would have been required to grant her petition. On October 29, 2014, the circuit court denied Stella's motion finding that "[(1)] there has been no misapplication of existing law; (2) no new law presented to the court; and (3) no new facts

available which require the court to reconsider" its July 2014 order. This timely appeal followed.

¶ 12                                    ANALYSIS

¶ 13    On appeal, Stella argues that the circuit court erred in denying her motion to reconsider[1] in that OPM was not authorized to recalculate her pension benefits and the 1996 court order lacked detail as to the present value of William's pension; therefore, the calculation of her pension benefits should be made according to the *Hunt* formula. Because Stella argues that the circuit court erred in the application of existing law, our review is *de novo*. *Kyles v. Maryville Academy*, 359 Ill. App. 3d 423, 433 (2005).

¶ 14    William's response on appeal is that federal law mandates the proper means to review an OPM pension calculation is through the federal administrative system starting with the Merit System Protection Board (MSPB). In the alternative, he argues that the 1996 judgment order does not lack detail, and therefore, the *Hunt* formula is not the proper means to calculate Stella's monthly pension benefits.

¶ 15    Retirement benefits for federal employees are administered by one of two systems, either the Civil Service Retirement System (CSRS) (5 U.S.C. §§ 8331-8351 (2006)) or the Federal Employees' Retirement System (FERS) (5 U.S.C. §§ 8401-8479 (2006)). CSRS retirement benefits, like William's, are determined by the OPM. The formula used to compute his monthly annuity payment is established by federal law and based on his years of service and salary history. 5 U.S.C. § 8339 (2006). The OPM is required to "comply with court orders, decrees, or court-approved property settlement agreements in connection with divorces *** that award a portion of the former employee's *** retirement benefits or a survivor annuity to a former spouse." 5 C.F.R. § 838.101(a)(1) (2012). OPM "must honor the clear instructions of the court" (5 C.F.R § 838.101(a)(2) (2012)) provided they are "specific and unambiguous" (*id.*).

¶ 16    CSRS has a three-part review process to resolve retirement benefits claims and disputes. *Ayrault v. Pena*, 60 F.3d 346, 348 (7th Cir. 1995). "First, Congress has designated the OPM to administer the CSRS and FERS, and to adjudicate all claims arising under the retirement system." *Lisanti v. United States*, No. 96 C 0395, 1998 WL 111574, at *3 (N.D. Ill. Mar. 10, 1998); see also *Lindahl v. Office of Personnel Management*, 470 U.S. 768 (1985). If the underlying court order is specific and unambiguous, the OPM's role is "purely ministerial." 5 C.F.R. § 838.101(a)(2) (2012). If a party wishes to appeal an act of the OPM and not challenge the underlying court order the party must follow the proper review process established by Congress. See *Snyder v. Office of Personnel Management*, 136 F.3d 1474, 1477 (Fed. Cir. 1998); see also *Kubiak v. Kubiak*, No. 76931, 2000 WL 1844738, at *5 (Ohio Ct. App. Dec. 14, 2000) (review of OPM action did not necessitate state judicial intervention where pensioner did not assert that the underlying state court order dividing the CSRS pension between

---

[1]Although Stella appeals from the denial of her motion to reconsider, her arguments on appeal are the same as those asserted in support of her petition and not the same as those made in support of her motion to reconsider. However, we will address the merits of her arguments on appeal because the denial of her petition was " 'a step in the procedural progression leading' " up to the judgment specified in her notice of appeal. *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 435 (1979) (quoting *Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252, 1254 (3d Cir. 1977)).

pensioner and his ex-wife was ambiguous). However, if the parties disagree about the validity or provision of the underlying court order, it "must be resolved by the court." 5 C.F.R. § 838.101(a)(2) (2012).

¶ 17    Congress has directed that the second step in the review process, to review administrative actions or orders by the OPM, is to appeal to the MSPB. 5 U.S.C. § 8347(d)(1) (2006) (CSRS); 5 U.S.C. § 8461(e)(1) (2006) (FERS). "Third, except in discrimination cases, an employee aggrieved by a final order or decision of the MSPB can file a petition for review in the federal circuit, which has exclusive jurisdiction over such appeals. 5 U.S.C. § 7703(b)(1); 28 U.S.C. § 1295(a)(9)." *Lisanti v. United States*, No. 96 C 0395, 1998 WL 111574, at *3 (N.D. Ill. Mar. 10, 1998); see also *Lindahl v. Office of Personnel Management*, 470 U.S. 768 (1985).

¶ 18    Here, Stella filed this petition claiming the underlying 1996 supplemental judgment is ambiguous. The 1996 supplemental judgment order awarded Stella:

> "one-half of the Respondent's pension benefits accrued as of August 31, 1994, said benefits to be divided pursuant to the same formula in assessing or ordering Qualified Domestic Relations Orders (QDRO), to wit: 50% of the accrued benefits for the period November 1, 1968 to August 31, 1994. Payment of said benefit shall commence when the pension goes into pay status."

¶ 19    Stella challenges the efficacy of the 1996 order, standing alone, to permit OPM to calculate her pension benefits. She asserts that the 1996 order is ambiguous because it "does not state a dollar amount of the award to Stella from William's federal employee pension. The Supplemental Judgment contains no language directing that salary adjustments that William receives after August 31, 1994 are to be disregarded in computing Stella's income."

¶ 20    From our review of the record it is clear that the 1996 supplemental order is not ambiguous. Further, it is clear that Stella had no issue with the 1996 order at the time it was entered, in the intervening 16 years until William retired, or in 2012 when she sought and was issued monthly pension benefits from OPM after she submitted the 1996 order as the basis of her pension claim. She only took issue with the 1996 order when OPM reduced her monthly benefits to a "$1,015.52 monthly payment *** not the $2704.03 erroneously awarded" because of an error OPM made in the calculation of the number of months she and William had been married and an erroneous determination of the gross benefits as of August 31, 1994. Stella asserts that "OPM approved the court order that it received in 2012, interpreted it to award Stella an amount based upon William's gross annuity at the time of retirement and paid that amount to Stella. Sometime later, William questioned the amount of payments to Stella and asked OPM to review Stella's claim. OPM did not have the authority to review the award to Stella."

¶ 21    Stella correctly asserts that "OPM approved the court order that it received in 2012, interpreted it to award Stella an amount based upon William's gross annuity at the time of retirement and paid that amount to Stella." However, OPM's interpretation of the order was wrong, and contrary to Stella's position, OPM had the authority to recalculate her monthly benefits. 5 U.S.C. § 8347(b) (2006); see generally *Wigton v. Berry*, 949 F. Supp. 2d 616, 632 (W.D. Pa. 2013). OPM's act of recalculating her pension benefits was ministerial, and therefore, review of OPM's recalculation should have gone before the MSPB. See *Perry v. Office of Personnel Management*, 243 F.3d 1337, 1341 (Fed. Cir. 2001) (OPM's calculation of benefits is "purely ministerial" (internal quotation marks omitted)); *Snyder v. Office of Personnel Management*, 136 F.3d 1474, 1477 (Fed. Cir. 1998). It follows that in the process of recalculation OPM would have the authority to revisit its "interpretation" of the order to

comply with terms of the order to calculate "Respondent's pension benefits accrued as of August 31, 1994," not as of the date of William's retirement.

¶ 22    Nonetheless, Stella filed this petition in the circuit court alleging that the underlying 1996 supplemental judgment awarding her a portion of William's pension was ambiguous because it did not state the exact amount of William's accrued pension on the date of dissolution. Because of this alleged ambiguity, she suggests that the proper means of calculating her pension benefits is the *Hunt* formula (*In re Marriage of Hunt*, 78 Ill. App. 3d 653 (1979)). We disagree. The *Hunt* formula is used where the underlying dissolution order was "silent" as to the method of dividing the pension. See *In re Marriage of Kehoe*, 2012 IL App (1st) 110644, ¶¶ 22-24. The 1996 order is not silent on how to calculate Stella's share of William's pension that accrued during the marriage. The parties agreed at the time of the entry of the 1996 order that "the exact amount of William's accrued pension" at the date of dissolution was to be determined on the date of retirement and "payment of said benefit [would] commence when the pension goes into pay status."

¶ 23    The calculation of William's pension is a ministerial act assigned to OPM, and if there is an error, there are federal review procedures available. However, if those procedures are not exhausted, all parties must comply with the order of the dissolution. It was the 1996 order awarding a portion of William's pension to Stella that had to be followed, regardless of the ministerial result. For example, if the court ordered Stella to receive 20% of William's $1000 pension and OPM sent her $100 that would not mean William was not required to pay the other $100 because Stella failed to exhaust her administrative remedies. However, we find no error in either the calculation or the determination by OPM of the pension benefits accrued during the marriage.

¶ 24    That stated, there is no ambiguity in the 1996 order: Stella was to receive half of the pension benefits accrued during the marriage up to August 31, 1994. That benefit was to be determined at retirement using the QDRO formula consisting of a fraction with the numerator being the total number of month's married during employment and the denominator being the total number of months employed. OPM determined the accrued pension benefits thru August 31, 1994, were $3567. Applying the formula (50% x (303/532)), the monthly payment of $1015.52 to Stella as her marital share is consistent with the 1996 order.

¶ 25    The 1996 award gave William "nothing as far as distribution in the estate other than one half of his pension and any monies that he might accumulate in the pension since the date of dissolution." Judge Donegan stated that Stella's interest in the pension will be "50% of the accrued benefits for the period November 1, 1968 to August 31, 1994," with payment commencing "when the pension goes into pay status." The record is consistent with respect to the calculations and the distribution to Stella of her share of the pension benefits. In ruling on Stella's instant petition, Judge Murphy stated that he "specifically found that both the OPM calculations and Judge Donegan's [calculations are] properly calculated" and OPM's formula "mirrors Judge Donegan's findings and order in the Supplemental Judgment." Judge Murphy was correct, and he did not err in denying the petition to recalculate.

¶ 26    Therefore, we find the 1996 order is not ambiguous and it is not "silent" as to how Stella's marital share of William's pension should be divided ("50% of the accrued benefits for the period of November 1, 1968 to August 31, 1994," to each spouse) and what portion of the pension benefits is marital (William's pension "through his employment with the United States Government is all marital property up until August 31, 1994"). *Id.* Therefore, we find the

- 6 -

circuit court was correct in denying Stella's requested relief of recalculating her pension benefits under the *Hunt* formula.

¶ 27                                                    CONCLUSION

¶ 28          For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 29          Affirmed.