**Constance B. NEWMAN, Director, Office of Personnel Management, Petitioner,**

v.

**Hazel H. TEIGELER, Respondent.**

No. 89–3365.

United States Court of Appeals, Federal Circuit.

Feb. 28, 1990.

Paul D. Langer, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for petitioner. With him on the brief, were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, and Robert A. Reutershan, Asst. Director. Also on the brief were James M. Strock, Gen. Counsel, Thomas F. Moyer, Asst. Gen. Counsel, and Murray Meeker, Atty., Office of Gen. Counsel, Office of Personnel Management, Washington, D.C., of counsel.

Joyce G. Friedman, Merit Systems Protection Bd., Washington, D.C., argued, for respondent. With her on the brief, were Mary L. Jennings, Acting Gen. Counsel, and Martha B. Schneider, Asst. Gen. Counsel.

Before NEWMAN and ARCHER, Circuit Judges, and BALDWIN, Senior Circuit Judge.

BALDWIN, Senior Circuit Judge.

Constance B. Newman, as Director of the Office of Personnel Management (collectively OPM), appeals from a final decision of the Merit Systems Protection Board (board), docket No. CH 08318810350, reversing the board's initial decision and the OPM's reconsideration decision denying Hazel H. Teigeler a survivor annuity, 40 M.S.P.R. 325. We affirm.

## BACKGROUND

Hazel H. Teigeler was married for 37 years to William B. Chambers, a federal employee for 30 years. She divorced Chambers in January 1976 and married Norman Teigeler in December 1976 at age 53. Chambers retired from federal service in 1979 and died in December 1981, having never remarried.

On May 6, 1987, Teigeler applied for survivor annuity benefits under the Spouse Equity Act (Act). Civil Service Retirement Spouse Equity Act of 1984, Pub.L. No. 98–615, 98 Stat. 3195, 3205, *as amended by* the Federal Employees Benefits Improvement Act of 1986, Pub.L. No. 99–251, § 201(b), 100 Stat. 14, 22; *see* 5 U.S.C. § 8341 note (1988). The OPM denied her application stating that under its regulatory interpretation of the amended Act, she was not entitled to benefits because she had remarried before attaining the age of 55. *See* 5 C.F.R. § 831.622(a) (1989). Upon reconsideration, the OPM again rejected Teigeler's application. On appeal to the board, the administrative judge found that Teigeler met all the requirements of the Act. Though Teigeler remarried before attaining the age of 55, she did so in 1976 and the Act precludes recovery only if the marriage prior to age 55 occurs after September 14, 1978. However, the administrative judge held that she was not entitled to an annuity because under 5 U.S.C. § 8341(b)(3) (1988), her annuity terminated upon her remarriage even before her right to it would have vested.[1] Upon petition for review, the full board reversed the initial decision and the OPM's reconsideration decision, and it ordered OPM to award the petitioner survivor annuity benefits.[2]

## ISSUE

Whether the board erred in applying the "plain meaning" rule of statutory construction in holding that under the amended Act, a former spouse of a civil servant annuitant who remarries before attaining the age of 55 is entitled to a survivor annuity if the marriage took place before September 14, 1978.

## OPINION

The statutory conditions for entitlement to a survivor annuity for former spouses whose marriages dissolved prior to September 14, 1978, as set forth in section 4(b)(4)(A) of the amended Act, are: (1) marriage to the federal employee during at least ten years of creditable service under section 8332 of title 5, United States Code; (2) the former spouse is at least 55 years of age on May 7, 1987; (3) the former spouse files an application for the survivor annuity before May 1989; (4) there is no surviving spouse, former spouse, or other person entitled to receive a survivor benefit based on the same federal civil service of the federal employee; and (5) the former spouse does not remarry before age 55 after September 14, 1978.

It is undisputed that Teigeler satisfies conditions (1)–(4), above. Regarding condition (5), it is undisputed that Teigeler remarried at the age of 53 before, not after, September 14, 1978. Hence, under the lit-

---

1. 5 U.S.C. § 8341(b)(3) states that:
   "A spouse acquired after retirement is entitled to a survivor annuity under this subsection only upon electing this annuity.... This annuity and the right thereto terminate on the last day of the month before the widow or widower—
   (A) dies; or
   (B) remarries before becoming 55 years of age."

2. The board rejected the administrative judge's view that 5 U.S.C. § 8341(b)(3) precludes an annuity. That section, it reasoned, applies only to "spouses acquired after retirement." The government does not appeal that aspect of the board's decision, although the provision is discussed within the context of other arguments.

eral language of the Act, she is entitled to an annuity. The only issue is whether the clear language of the Act, "before age 55 after September 14, 1978" should be interpreted to mean what it says. The OPM argues that it should not; we disagree.

The OPM asserts that "before age 55 after September 14, 1978" should be interpreted to mean "before age 55," because the inclusion of "after September 14, 1978" in the Act was an obvious drafting error which leads to an absurd result, most certainly unintended by Congress. That is, a literal reading of the Act produces two differently treated groups of former spouses for purposes of entitlement: those whose marriages dissolved before September 14, 1978 are given greater rights than those whose marriages dissolved after September 14, 1978. Petitioner's brief at 8. Specifically, members of the first group, but not the second, can remarry before age 55 and still be entitled to an annuity.

According to the OPM, the proper interpretation of the Act, and the interpretation which should be given deference in light of the OPM's role as administrator of the Act, is reflected in the OPM's contemporaneously promulgated regulation, 5 C.F.R. § 831.622(a) (1989), wherein all former spouses who remarry before age 55 are treated the same.

It is well settled law that the plain and unambiguous meaning of the words used by Congress prevails in the absence of a clearly expressed legislative intent to the contrary. *See Mansell v. Mansell,* —— U.S. ——, 109 S.Ct. 2023, 2030, 104 L.Ed.2d 675 (1989); *LSI Computer Sys. v. United States Int'l Trade Comm'n,* 832 F.2d 588, 590 (Fed.Cir.1987). Here, "after September 14, 1978" is clear and unambiguous and the legislative history reveals nothing to indicate that Congress intended an interpretation contrary to the plain meaning of these words. *See* H.R.Rep. No. 1054, 98th Cong., 2nd Sess. 1, *reprinted in* 1984 U.S. Code Cong. & Admin.News 5540, 5542; H.R.Rep. No. 292, 99th Cong., 1st Sess., (1985); 132 Cong.Rec. 1338, 1344, 1346 (1986).

Although the amended Act's legislative history is silent with regard to the controversial date and as to whether Congress wanted all former spouses who remarry before age 55 to be treated the same, it does suggest a clear congressional intent to increase the number of former spouses eligible for survival benefits. 1984 U.S. Code Cong. & Admin.News at 5542–43. Thus, we do not believe that a literal reading of the statute, whereby a new class of potential recipients is created, produces an absurd result simply because the reason for creating that *particular* group is not readily apparent to the OPM. Although the draftsmanship of the amended Act may have been less than perfect, the absurd consequences doctrine[3] urged by the government is unavailing here, where the letter of the law appears to further, rather than frustrate, congressional intent. As we have previously stated, "[t]he task of rewriting a statute is and should remain a duty reserved for Congress." *Horner v. Jeffrey,* 823 F.2d 1521, 1527 (Fed.Cir.1987) (citing *Marchetti v. United States,* 390 U.S. 39, 60 n. 18, 88 S.Ct. 697, 708 n. 18, 19 L.Ed.2d 889 (1968)).

This court acknowledges that "an agency's interpretation of the statutes it is charged with administering is normally entitled to great deference by a reviewing court." *Madison Galleries, Ltd. v. United States,* 870 F.2d 627, 631 (Fed.Cir.1989). However, the courts are the final authorities on matters of statutory construction and "must reject agency constructions ... which are inconsistent with statutory mandate or that frustrate the policy that Congress sought to implement." *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1425 (Fed.Cir. 1988) (quoting *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981)). Furthermore, "[e]ven contemporaneous and longstanding agency interpretations must fall to the extent they conflict with statutory language." *Public Employees Retirement Sys. of Ohio v. Betts,* —— U.S. ——, 109 S.Ct. 2854, 2863, 106 L.Ed.2d 134 (1989). Here, the OPM's

---

3. *See Church of Holy Trinity v. United States,* 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892); *Ambassador Div. of Florsheim Shoe v. United States,* 748 F.2d 1560, 1564 (Fed.Cir.1984).

omission of "after September 14, 1978" from its regulation clearly conflicts with the express language of the amended Act and is unsupported by legislative history. Indeed, nowhere in the legislative history does Congress express an intent to delete the controversial term. Therefore, the OPM's construction of the amended Act is unreasonable and was not entitled to deference by the board. *See also Glaxo Operations UK Ltd. v. Quigg,* 894 F.2d 392, 398 (Fed.Cir.1990) (no deference should be given to an agency interpretation that is contrary to the plain meaning of the statute).

## CONCLUSION

We conclude that, in light of the legislative history of the amended Act, the board properly applied the rules of statutory construction, and the plain meaning of the amended Act should, therefore, be given effect so as to enable Teigeler to receive survival annuity benefits. Accordingly, the board's decision is

AFFIRMED.