**Constance Berry NEWMAN, Director, Office of Personnel Management, Petitioner,**

v.

**Lois G. LOVE and Esther E. Penn,**

**and**

**Merit Systems Protection Board, Respondents.**

No. 91–3268.

United States Court of Appeals, Federal Circuit.

April 15, 1992.

Domenique Kirchner, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for petitioner. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Mary Mitchelson, Asst. Director. Also on the brief were Jaime Ramon, Gen. Counsel, Thomas F. Moyer, Asst. Gen. Counsel and Murray Meeker, Atty., Office of Gen. Counsel, Office of Personnel Management, of counsel.

Calvin M. Morrow, Atty., U.S. Merit Systems Protection Board, Washington, D.C., argued for respondents. With him on the brief was Mary L. Jennings, Acting Gen. Counsel. Mark O. Thurston, Tulsa, Okl., was on the brief for respondent, Lois G. Love. Carolyn Sue Daniel, Shepherdstown, W.Va., was on the brief for respondent, Esther E. Penn.

Before PLAGER, CLEVENGER and RADER, Circuit Judges.

CLEVENGER, Circuit Judge.

Constance Berry Newman, Director of the Office of Personnel Management (OPM) appeals the final decisions of the Merit Systems Protection Board (Board) in *Love v. Office of Personnel Management,* 46 M.S.P.R. 641 (1991) and in *Penn v. Office of Personnel Management,* 46 M.S.P.R. 637 (1991). In those cases, the Board held OPM's regulation at 5 C.F.R. § 831.1704(e) an invalid implementation of 5 U.S.C. § 8341(h) and ordered OPM to award Ms. Love and Ms. Penn the future survivor annuity benefits for which each had applied. The cases were consolidated for briefing, argument and decision here because a common question of law determines the outcome of both. For the reasons set forth below, the final decisions of the Board are affirmed.

I

Before the enactment of Section 2(4)(G) of the Civil Service Retirement Spouse Equity Act of 1984, Pub.L. No. 98–615, 98 Stat. 3195, 3200–01, a court could not require that a survivor benefit be awarded to the former spouse of a federal employee or retiree. One significant purpose of the Spouse Equity Act was to require OPM to recognize court orders awarding survivor annuities to such former spouses. H.R.Rep. No. 1054, 98th Cong., 2d Sess. 10 (1984), *reprinted in* 1984 U.S.C.C.A.N. 5540. The Spouse Equity Act extended survivor benefits, by court order or election, to former spouses of federal employees because of Congressional concern about the financial plight of a large percentage of such individuals, many of them unable to work and most of them ineligible for social security or private pensions. H.R.Rep. No. 1054 at 12, *reprinted in* 1984 U.S.C.C.A.N. at 5542–43.

Ms. Love and Ms. Penn (formerly Mrs. Weatherholtz) were divorced after their spouses retired from service in the federal government. At the time of both divorces in 1987, 5 U.S.C. § 8341(h) provided in pertinent part:

(1) Subject to paragraphs (2) through (5) of this subsection, a former spouse of a deceased employee ... is entitled to a survivor annuity ... if and to the extent expressly provided for ... in the terms of any decree of divorce or annulment or any court order or court-approved property settlement agreement incident to such decree.

\*  \*  \*  \*  \*  \*

(4) For purposes of this subchapter, a modification in a decree, order, [or] agreement ... referred to in paragraph (1) of this subsection shall not be effective—

(A) if such modification is made after the retirement or death of the employee ... and

(B) to the extent that such modification involves an annuity under this subsection.

OPM implemented regulations for the "modification" provision of § 8341(h)(4). *See* 5 C.F.R. § 831.1704. The portion of the regulation regarding orders issued after the retirement or death of an employee provides in pertinent part:

(e)(1) For purposes of awarding ... a former spouse annuity ... the court order must be

\*  \*  \*  \*  \*  \*

(ii) [t]he first order terminating the marital relationship between the retiree and the former spouse.

\*  \*  \*  \*  \*  \*

(4) In paragraph (e)(1)(ii) of this section, the "first order terminating the marital relationship between the retiree and the former spouse" means the original written order that first ends ... the marriage, and does not include

\*  \*  \*  \*  \*  \*

(ii) [a]ny order issued under reserved jurisdiction or any other orders issued subsequent to the original written order terminating the marriage that divide marital property (even if no division of marital property was made in the order terminating the marriage) re-gardless of the effective date of the order.

5 C.F.R. § 831.1704(e) (1989).

The Loves and the Weatherholtzes were divorced respectively in Oklahoma and West Virginia. Both divorce decrees expressly provided that all matters relating to property division were excluded from the divorce decrees and were reserved by the state court for future consideration and judicial disposition in bifurcated proceedings. Such proceedings are common; OPM cites only one state (Texas) that absolutely prohibits bifurcated divorce proceedings. In due course, the respective state courts entered orders mandating property settlement agreements, each providing the retiree's former spouse with rights to future survivor annuity benefits upon the death of the retirees.

Messrs. Love and Weatherholtz had each elected reduced annuities upon their retirements, in 1972 and 1974 respectively, in order to fund survivor annuities for their then spouses. *See* 5 U.S.C. § 8339(j) (1974 Supp.). Love's annuity was reduced for 15 years; Weatherholtz's for 13 years. Both, as a result of bifurcated divorce proceedings, attempted to provide post-divorce financial protection for their former spouses in the form of survivor annuities.

## II

The applications to OPM of Ms. Love and Ms. Penn to implement the survivor annuities memorialized in their state court orders were denied in initial decisions and upon reconsideration. In each instance, OPM noted that the court order concerning the property settlement was not the "first order terminating the marital relationship" under 5 C.F.R. § 831.1704(e) and consequently was an ineffective "modification" under 5 U.S.C. § 8341(h)(4).

Upon Ms. Love's appeal to the Board, the Administrative Judge in her initial decision ruled that the first state court order concerning property settlement could not, as a matter of statutory construction, constitute a "modification" of the divorce decree under 5 U.S.C. § 8341(h)(4), because the division of property was expressly reserved for

later bifurcated proceedings in the earlier divorce decree order. In reversing OPM's reconsideration decision, the Administrative Judge did not reach the issue of whether 5 C.F.R. § 831.1704(e) is a valid implementation of the statute. Because the January 4, 1989 effective date of the regulation was after the date of the Love divorce and subsequent property settlement order, the Administrative Judge held the regulation inapplicable.

Ms. Penn's appeal to the Board found a less receptive initial audience. The Administrative Judge declared the subsequent property order a statutorily ineffective modification of the earlier divorce decree and thus deemed 5 C.F.R. § 831.1704(e) a permissible exercise of OPM's rulemaking authority.

OPM petitioned the Board for review of the initial *Love* decision, and Ms. Penn petitioned for review of her adverse initial decision. The Board employed *Love* as the lead case. It found OPM's January 1989 regulation not in conflict with OPM's previous implementation of the statute, essentially interpretative in nature and therefore applicable to pre-effective date proceedings. It then construed the term "modification" in § 8341(h)(4) not to include a first state court order addressing property division when the earlier divorce decree excluded and expressly reserved such matters for subsequent bifurcated proceedings. In the light of that statutory construction, OPM's January 1989 regulation fell of its own weight, and the Board ordered OPM to award Love the benefits to which she was otherwise entitled. *Love* thus disposed of the issue in *Penn,* and the Board issued a similar order to OPM regarding Ms. Penn.

### III

■ The sole question before this court is whether a decree of divorce which dissolves a marriage, but does nothing with respect to property, is modified for purposes of § 8341(h)(4) by a subsequent court order which for the first time addresses the issue of property division and settlement. The question is framed by the very words of the statute, which contemplate that court-ordered or court-approved property settlement agreements may be entered "incident to," and thus separate from, divorce decrees.

The statute then provides that modifications to certain court decrees, orders or approvals shall not be effective if made after the retirement or death of the employee. The ineffective matters are, as set forth in the plain meaning of the statutory words: a modification in a decree of divorce or annulment, a modification of a court order entered incident to such decree, or a modification of a court-approved property settlement agreement entered incident to such decree.

OPM, however, urges us to read the words "incident to" such a decree in § 8341(h)(4) to mean "included in" such a decree. OPM argues that a survivor annuity award is not "incident to" a divorce decree unless made before or simultaneous with entry of the divorce decree. If matters relating to property settlement are not included in a divorce decree, and arise in subsequently entered orders, according to OPM they are necessarily "modifications" of the divorce decree and thus statutorily ineffective. OPM's interpretation of the words in § 8341(h)(4) accompanied the promulgation of its 1989 regulation: "unless the award is made in, or prior to, the judgment terminating the marriage" it is ineffective. 53 Fed.Reg. 48629 (Dec. 2, 1988). According to OPM, a court-approved property settlement agreement entered incident but subsequent to the decree of divorce, even on the same day, is statutorily ineffective.

The plain meaning of the word "modification" defeats OPM's interpretation of § 8341(h). A modification is a change or alteration or limitation. *See Black's Law Dictionary* 1004 (6th ed.1990); *Webster's Third New International Dictionary* 1452 (1976). An initial court order dividing marital property, such as the orders in this case, does not change, alter or limit the terms or effect of the previously entered decree of divorce, which dissolved the marriage. The initial property order does not change, alter or limit anything.

An agency's interpretation of statutes which Congress charges it to administer is normally entitled to great deference. On matters of statutory construction, however, we must reject agency interpretations which conflict with plain words of statutory language. *Public Employees Retirement Sys. v. Betts*, 492 U.S. 158, 171, 109 S.Ct. 2854, 2863, 106 L.Ed.2d 134 (1989) ("But of course, no deference is due to agency interpretations at odds with the plain language of the statute itself."). This Court has previously declined to defer to OPM's regulatory interpretation of a statute which it administers when the interpretation was inconsistent with the express language of the statute. *Horner v. Hollander*, 895 F.2d 759, 761 (Fed.Cir.1990); *Newman v. Teigeler*, 898 F.2d 1574, 1576 (Fed.Cir.1990). *Cf. Day v. Office of Personnel Management*, 833 F.2d 1580, 1581–82 (Fed.Cir.1987).

OPM contends that the plain meaning of the statute is contradicted by its legislative history. To illustrate the point, OPM cites a single passage in the House Report on the act which contained § 8341(h). That passage states that "[g]enerally, the rights of any former spouse ... are fixed at the time of retirement of the employee ... and are not thereafter subject to modification." H.R.Rep. No. 1054 at 14, *reprinted in* 1984 U.S.C.C.A.N. at 5545. The only illustrative example in the passage describes the circumstances of a former spouse who was divorced *before* retirement and obtained a court order establishing or modifying survivor benefits *after* retirement. *Id.* The general proposition cited in the House Report is unquestionable but of no value as an aid to understanding the meaning of the word "modification." The example is immaterial to our decision, because each divorce occurred after retirement.

The telling point made by the legislative history of § 8341(h) is that Congress did not focus on the widespread availability of bifurcated divorce proceedings, and the attendant likelihood that property settlements including survivor annuity benefits would be entered incident but subsequent to divorce decrees. Because of the plain meaning of the statute, we need not confront the proposition that Congress, which manifestly was intent on granting ex-spouses such benefits, meant to restrict access to those benefits to domiciles of states that prohibit bifurcated divorces.

The absence of Congressional focus on bifurcated divorce proceedings, however, leaves room for OPM's principal argument in support of its regulatory interpretation of the statute. OPM argues that survivor annuity benefits conferred in bifurcated divorce proceedings must be denied because otherwise the government will be deprived of full funding for the annuity during a "gap" period. Survivor annuities for current and former spouses are financed in part by reductions in the lifetime annuity payments made to the federal retiree. *See* 5 U.S.C. § 8339(j)(1), (2) (1988). Under 5 U.S.C. § 8339(j)(5)(A)(ii), any such reduction for a current spouse is terminated on dissolution of the marriage. If the former spouse (after the dissolution) is entitled to a survivor annuity under § 8341(h), an appropriate reduction in the retiree's annuity is made. In a bifurcated divorce proceeding, the retiree will receive a full annuity during a "gap" period existing between dissolution of the marriage and award of the survivor annuity to the former spouse, when the retiree's annuity will again be reduced.

The funding for other "gap" periods was foreseen and provided for by Congress. For example, the election by a retiree after retirement of survivor annuities for current or former spouses requires the retiree to redeposit in the retirement fund the amount by which the lifetime annuity received since retirement would have been reduced had survivor benefits been elected at that time. 5 U.S.C. § 8339(j)(3), (j)(5)(C), (k)(2).

The omission of a specific funding mechanism for the bifurcated divorce "gap" thus becomes the bedrock of OPM's argument that Congress clearly meant to deny survivor annuity benefits awarded in bifurcated divorce proceedings.

One response to OPM's concern is that Congress did not focus on the bifurcated

divorce gap, and therefore did not fail to fund it in order indirectly to bar bifurcated award of survivor annuities. Moreover, OPM's interpretation of the statute would bar such bifurcated awards even where no funding gap exists. A full month following the divorce must pass before the retiree's annuity is restored to its full, unreduced level. *See* 5 U.S.C. § 8339(j)(5)(A)(ii). Thus, even if a property award is entered later in the same month as a divorce decree, OPM deems the award invalid despite the lack of a funding gap.

OPM's view similarly overlooks the distinct possibility that divorce proceedings, including bifurcated proceedings, may yield significant offsetting fiscal benefits. When no survivor benefits result in connection with divorce proceedings, the amount by which the retiree's annuity has been reduced to fund a survivor annuity for the former spouse, up to the divorce, is not returned to the retiree. If the Loves had not sought a court-ordered survivor annuity, the government would have kept the contributions Mr. Love made for fifteen years. The funding benefit from Mr. Weatherholtz, without a court-ordered benefit to Ms. Penn, would have been the amount by which his retirement annuity was reduced for thirteen years. Yet another response is that OPM may promulgate a regulation requiring redeposit of sums necessary to close the funding gap. OPM, citing *Office of Personnel Management v. Richmond*, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) and other cases limiting OPM's authority to spend public funds, states that it lacks the legal power to close the gap by issuance of a redeposit regulation. OPM does not address the scope of the general rulemaking power Congress provided it in the Spouse Equity Act to "prescribe such regulations as are necessary and proper to carry out this subchapter." *See* 5 U.S.C. § 8347(a) (1988). We may await another time to decide whether a redeposit regulation to cure OPM's bifurcated divorce gap concern would exceed OPM's statutory authority.

Meanwhile, it is enough to note that we have before rejected OPM's attempt to rewrite the Spouse Equity Act to contain costs or to avoid what OPM viewed as impermissible distinctions in benefits. *See Horner v. Hollander*, 895 F.2d at 760; *Newman v. Teigeler*, 898 F.2d at 1576. If Congress wishes to deny implementation of survivor annuity benefits in bifurcated divorce proceedings, that choice is its to make. The observation of this court in *Newman v. Teigeler* remains correct: "As we have previously stated, '[t]he task of rewriting a statute is and should remain a duty reserved for Congress.' *Horner v. Jeffrey*, 823 F.2d 1521, 1527 (Fed.Cir.1987) (citing *Marchetti v. United States*, 390 U.S. 39, 60 n. 18, 88 S.Ct. 697, 708 n. 18, 19 L.Ed.2d 889 (1968))." 898 F.2d at 1576. As in *Horner v. Hollander*, 895 F.2d at 760, "[w]e concur in the Board's assessment of the plain meaning in this case."

The decisions of the Board in the *Love* and *Penn* cases are therefore

AFFIRMED.