**Linda L. VACCARO, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

No. 00–3274.

United States Court of Appeals, Federal Circuit.

Aug. 17, 2001.

Carl V. Angelis, Counselor at Law, of Washington, DC, argued for petitioner.

Mark L. Josephs, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With him on the brief were David M. Cohen, Director; and Donald E. Kinner, Assistant Director. Of counsel on the brief was Earl A. Sanders, Attorney, Office of General Counsel, Office of Personnel Management, of Washington, DC.

Before MICHEL, SCHALL, and DYK, Circuit Judges.

SCHALL, Circuit Judge.

Linda L. Vaccaro petitions for review of the final decision of the Merit Systems Protection Board ("Board") that affirmed the denial by the Office of Personnel Man-

agement ("OPM") of her application for a survivor annuity as the former spouse of Angelo Vaccaro, a deceased federal retiree. *Vaccaro v. Office of Pers. Mgmt.*, 85 M.S.P.R. 329 (M.S.P.B. 2000) ("*Vaccaro II* "). We affirm.

## BACKGROUND

### I.

Pursuant to the provisions of the Civil Service Retirement Spouse Equity Act of 1984, Pub.L. No. 98–615, 98 Stat. 3195, 3200–01 ("CSRSEA"), a former spouse of a deceased federal employee or civil service annuitant is entitled to a survivor annuity if certain conditions are met. The provisions of the CSRSEA that are relevant to this case are found at 5 U.S.C. § 8341(h),[1] which provides in pertinent part as follows:

(1) Subject to paragraphs (2) through (5) of this subsection, a former spouse of a deceased employee [or] annuitant[2] ... is entitled to a survivor annuity under this subsection, if and to the extent expressly provided for ... in the terms of any decree of divorce or annulment or any court order or court-approved property settlement agreement incident to such decree.

\* \* \* \* \* \*

(4) For purposes of this subchapter, a modification in a decree, order, [or] agreement referred to in paragraph (1) of this subsection shall not be effective—

(A) if such modification is made after the retirement or death of the employee ... and

(B) to the extent that such modification involves an annuity under this subsection.

### II.

The pertinent facts can be briefly stated: The Vaccaros married in 1974. In 1981, Mr. Vaccaro retired from his employment with the United States Postal Service. In his application for retirement, he elected to receive a reduced monthly annuity payment so that his spouse would be entitled to a survivor annuity. Mr. Vaccaro received reduced annuity payments from the date of his retirement until his divorce fifteen years later.

Ms. Vaccaro filed for divorce in 1996. On August 9, 1996, the Superior Court of the State of California, County of Del Norte, entered a judgment of dissolution of the Vaccaros' marriage. The judgment stated that the parties were "ordered to comply with the terms and provisions of attachment '3.g.' " Attachment "3.g." was a marital property agreement. The agreement listed the community property of Mr. and Mrs. Vaccaro on the date of their separation. Among the items of property listed was "Community interest in husband's postal retirement."[3] The agreement then proceeded to divide the community property. Mr. Vaccaro's civil service retirement was addressed as follows:

Division of community interest in the Federal Employee's Civil Service Pension is deferred so long as Respondent pays to Petitioner as and for spousal support the sum of not less than Three

---

1. All statutory references are to the 1994 version of the United States Code. All regulatory references are to regulations as they appear in the 2001 version of Title 5 of the Code of Federal Regulations.

2. An "annuitant" includes "a former employee ... who, on the basis of his service, meets all requirements of this subchapter for title to

annuity and files claim therefore." 5 U.S.C. § 8331(9). At all times relevant to this case, Mr. Vaccaro was an "annuitant."

3. The other items of community property were the family residence, miscellaneous household furniture, furnishings and appliances, an automobile, a joint savings account, and several life insurance policies.

Hundred ($300) Dollars per month. The court retains jurisdiction over this asset to insure [Ms. Vaccaro] receives her share of the community interest in the retirement.

Mr. Vaccaro died on March 7, 1997. On March 25, 1997, upon Ms. Vaccaro's motion, the California court awarded Ms. Vaccaro a former spouse survivor annuity. The order stated in pertinent part: "Having reserved jurisdiction over Respondent's Federal Employee Civil Service Pension, the court hereby awards to Petitioner all benefits as surviving spouse of Angelo Vaccaro."

On March 26, 1997, Ms. Vaccaro filed with OPM an application for a survivor annuity based upon the March 25, 1997 order of the California court. In a reconsideration decision dated August 21, 1998, OPM denied the application. After citing 5 U.S.C. § 8341(h)(1) and 5 U.S.C. § 8341(h)(4), as well as its regulations implementing those statutory provisions,[4] OPM stated to Ms. Vaccaro:

> Your divorce decree did not award you a former spouse survivor annuity nor did

it direct Mr. Vaccaro to elect to provide you a former spouse survivor annuity. The court order dated March 25, 1997, is not qualifying for awarding you a former spouse survivor annuity since it was issued after the first court order that divided marital property between you and Mr. Vaccaro. It was also issued after his death. Thus, you are not eligible for a former spouse survivor annuity as the former spouse of Mr. Vaccaro.

Ms. Vaccaro appealed to the Board. In an initial decision dated December 15, 1998, the administrative judge to whom the appeal was assigned ruled that OPM's reconsideration decision was in accordance with 5 C.F.R. § 838.1004. *Vaccaro v. Office of Pers. Mgmt.*, No. SF–0831–98–0740–I–1, slip op. at 5 (Merit Sys. Prot. Bd. Dec. 15, 1998) ("*Vaccaro I* ").[5] In addition, the administrative judge rejected Ms. Vaccaro's claim that she was entitled to a survivor annuity because, after his divorce and prior to his death, Mr. Vaccaro would have made a timely election to provide her with such an annuity had OPM not failed to provide him with notice of his election rights. The administrative judge there-

---

4. The pertinent OPM regulations are codified at 5 C.F.R. §§ 838.804, 838.806, and 838.1004.

5. Title 5 C.F.R. § 838.1004, Qualifying Court Orders, provides in pertinent part:
   (e)(1) For purposes of awarding, increasing, reducing, or eliminating a former spouse survivor annuity, or explaining interpreting, or clarifying a court order that awards, increases reduces or eliminates a former spouse annuity, the court order must be:
   (i) Issued on a day prior to the date of retirement or date of death of the employee; or
   (ii) The first order dividing the marital property of the retiree and the former spouse.
   *    *    *
   (4)(i) In paragraph (e)(1)(ii) of this section, the "first order dividing the marital proper-

ty of the retiree and the former spouse" means—
(A) The original written order that first ends ... the marriage if the court divides any marital property (or approves a property settlement agreement that divides any marital property) ...; or (B) The original written order issued after the marriage has been terminated in which the court first divides any marital property (or first approves a property agreement that divides any marital property) if no marital property has been divided prior to ... that order. (ii) The first order dividing marital property does not include—
(A) Any court order that amends, explains, clarifies, or interprets the original written order regardless of the effective date ... or
(B) Any court order issued under reserved jurisdiction.

fore sustained OPM's denial of Ms. Vaccaro's application. The administrative judge's initial decision became the final decision of the Board when, on February 25, 2000, a divided Board denied Ms. Vaccaro's petition for review. *Vaccaro II,* at 332–34. Ms. Vaccaro filed a timely petition for review with this court in accordance with 5 U.S.C. § 7703. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

### I.

Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c).

Ms. Vaccaro raises two arguments on appeal. First, she contends that the March 25, 1997 order of the California court that awarded her a survivor annuity should be given effect under 5 U.S.C. § 8341(h)(1). According to Ms. Vaccaro, the March 25th order does not run afoul of the provisions of 5 U.S.C. § 8341(h)(4) because it did not constitute a "modification" of the 1996 divorce decree. Ms. Vaccaro notes that the 1996 decree that dissolved the Vaccaros' marriage divided all marital property except for the community interest in Mr. Vaccaro's "Civil Service Pension." Ms. Vaccaro points out that division of that property was deferred and that the court reserved jurisdiction over the property. From that fact, Ms. Vaccaro reasons that, since the 1996 decree did nothing as far as Mr. Vaccaro's pension was concerned, the 1997 order that awarded her a survivor annuity did not modify the decree. The government counters that, since the 1996 decree did divide marital property,

the 1997 order awarding a survivor annuity was ineffective under § 8341(h)(4), because it came after Mr. Vaccaro's death and involved a survivor annuity. Ms. Vaccaro's second argument on appeal is that substantial evidence does not support the administrative judge's finding that she failed to establish that, following his divorce, Mr. Vaccaro intended to elect a survivor annuity for her and would have done so had OPM not failed to provide him with notice of his election rights. The government responds that substantial evidence does support the administrative judge's decision. We address Ms. Vaccaro's contentions in turn.

### II.

As noted above, under the CSRSEA, a former spouse of a deceased annuitant is entitled to a survivor annuity "if and to the extent expressly provided for ... in the terms of any decree of divorce or annulment or any court order or court-approved property settlement agreement incident to ... such decree." 5 U.S.C. § 8341(h)(1). In addition,

> a modification in a decree, order, [or] agreement ... referred to in [5 U.S.C. § 8341(h)(1) ] shall not be effective if such modification is made after the retirement or death of the employee ... and to the extent that such modification involves an annuity under this subsection.

5 U.S.C. § 8341(h)(4).

It is clear that the 1996 divorce decree did not award Ms. Vaccaro a survivor annuity. It also is clear that the 1997 order of the California court was entered after Mr. Vaccaro's death and involved an annuity under 5 U.S.C. § 8341(h). The question before us then is whether a divorce decree that divides marital property, but defers "[d]ivision of community interest in the Federal Employee's

Civil Service Pension" so long as spousal support payments are made and does not award a survivor annuity, is modified by a subsequent order that does award such an annuity. This question involves an issue of statutory interpretation, a matter of law that we review de novo. *See Rosete v. Office of Pers. Mgmt.*, 48 F.3d 514, 517 (Fed.Cir.1995).

In addressing the question before us, we do not write upon an entirely clean slate. In *Newman v. Love*, 962 F.2d 1008, 1010 (Fed.Cir.1992), we addressed the provisions of the CSRSEA that are at issue in this case. *Love* involved two separate petitioners, each with two court orders, one order that dissolved the marriage and the other that divided the marital property. The two initial divorce decrees in *Love* expressly provided that all matters relating to property division were excluded from the decrees and were reserved by the state courts for future consideration and judicial disposition in bifurcated proceedings. *Id.* In subsequent divorce proceedings, the former husbands in *Love* sought to provide post-divorce financial protection for their former spouses in the form of survivor annuities. *Id.* When the surviving spouses sought to implement the survivor annuities memorialized in the state court orders, OPM denied the applications. *Id.* The case came to us as an appeal by OPM from the decision of the Board reversing OPM's reconsideration decisions and directing OPM to award the two surviving spouses the survivor annuities for which they had applied.

We framed the issue before us in *Love* as "whether a decree of divorce which dissolves a marriage, but does nothing with respect to property, is modified for purposes of § 8341(h)(4) by a subsequent court order which for the first time addresses the issue of property division and settlement." *Love*, 962 F.2d at 1011. Looking to the dictionary, we stated that the plain meaning of the word "modification" is "a change or alteration or limitation." *Id.* Armed with that definition, we concluded that the bifurcated orders in *Love*, which were the initial orders dividing the marital property, did not "alter or limit the terms or effect of the previously entered decrees of divorce, which dissolved the marriage[s]." *Id.* The reason was that the bifurcated orders did not "change, alter or limit anything." Accordingly, we held that OPM's reconsideration decisions denying implementation of the bifurcated orders that awarded survivor annuities were contrary to § 8341(h). *Id.* We therefore affirmed the decision of the Board.

We had occasion to consider the same provisions of the CSRSEA again in *Hokanson v. Office of Personnel Management*, 122 F.3d 1043 (Fed.Cir.1997). In *Hokanson*, the final judgment and decree of divorce, which was issued in the State of Idaho and which divided the marital property, issued on September 19, 1990. 122 F.3d at 1044. The 1990 decree included the following awards:

> As her portion of said civil service retirement benefits, [Mrs. Hokanson] shall be paid the sum of $556 per month.... The balance of [the] civil service retirement benefits shall be paid to [Mr. Hokanson].

*Id.* at 1044–45. The 1990 divorce decree was supplemented by an amended judgment on April 5, 1991.

Mr. Hokanson died on September 26, 1994, before retiring from federal service. Consequently, Ms. Hokanson never received any payments from the expected retirement annuity. *Id.* After OPM denied her request for a former spouse survivor annuity on the ground that the divorce decree did not expressly provide for such an annuity, as required by § 8341(h)(1), Ms. Hokanson requested that the Idaho court "clarify the 1991 amended decree

that had issued four years earlier." *Id.* On June 3, 1996, the Idaho court issued an order that purported to clarify the divorce decree. The 1996 order indicated that it was the intent of the court to award Ms. Hokanson 50% of all retirement benefits that accrued as of the date of divorce "whether those benefits be characterized as 'retirement benefits,' 'survivor benefits,' or 'death benefits.'" *Id.* OPM denied Ms. Hokanson's renewed application for a survivor annuity and the Board affirmed the denial.

On appeal, we affirmed the Board's decision. We pointed out that § 8341(h)(1) states that a former spouse is not eligible for a survivor annuity unless the annuity is "expressly provided for." *Hokanson,* 122 F.3d at 1044. In addition, we looked to what we characterized as OPM's relevant regulations: 5 C.F.R. § 838.1004(a), 5 C.F.R. § 838.1004(c)(2), and 5 C.F.R. § 838.1003. *Id.* at 1045–46. We also considered OPM's "Guidelines For Interpreting State Court Orders Awarding Survivor Annuity Benefits to Former Spouses." *Id.*[6] We concluded that, under the statute, the regulations, and the Guidelines, "an award directing the payment of a share of a federal employee's retirement benefits is distinct from, and will not be interpreted

as, an award of a survivor annuity." *Id.* at 1046.

Turning to Ms. Hokanson's divorce decree, we noted that the decree did not provide Ms. Hokanson with a "former spouse annuity" or "death benefits," or designate her as the "beneficiary" of any such benefits. *Id.* at 1046. We reasoned that, "as Mr. Hokanson was to receive the balance of the annuity," it was "clear that the decree did nothing more than divide his retirement annuity." *Id.* We continued: "That annuity, including Ms. Hokanson's share, would cease upon his death. Such an award is insufficient to provide Ms. Hokanson with a survivor annuity." *Id.* In our decision, we rejected Ms. Hokanson's argument that any deficiencies in the 1991 decree were rectified in the Idaho court's 1996 "clarification order." In so doing, we concluded that the 1996 order could have no effect as far as awarding Ms. Hokanson a survivor annuity was concerned. We stated: "Because the 1991 amended divorce decree divided the marital assets, including the retirement benefits, the 1996 order is properly considered a 'modification' of that decree and is therefore ineffective for purposes of awarding Ms. Hokanson a former spouse survivor annuity under 5 U.S.C. § 8341(h)." *Id.* at 1048.

---

**6.** The regulations state that, for a qualifying court order to affect civil service retirement benefits, the order must "divide employee retirement benefits, award a payment from employee retirement benefits, or award a former spouse annuity." 5 C.F.R. § 838.1004(a). The regulations further state that, "[f]or purposes of awarding a former spouse annuity, the court order must either state the former spouse's entitlement to a survivor annuity or direct an employee ... or retiree to provide a former spouse annuity." 5 C.F.R. § 838.1004(c)(2). A "former spouse annuity" is "a recurring benefit under [the Civil Service Retirement System] that is payable to a former spouse after the employee's ... or retiree's death." 5 C.F.R. § 831.603; *see also*

5 C.F.R. § 838.1003. The Guidelines provide that orders not using terms such as "survivor annuity," "death benefits," or "former spouse annuity" will not be interpreted as awarding a former spouse annuity. 5 C.F.R. § 838.603.

For purposes of the regulations, the term "employee retirement benefits" means "employee's ... annuities and refunds of retirement contributions but does not include survivor annuities." 5 C.F.R. § 838.1003. The regulations thus distinguish between the payment of a share of a federal employee's retirement benefits to a former spouse during the lifetime of the retired federal employee and the award of a survivor annuity to a former spouse, payable after the death of the employee.

When, as was the case in *Love*, a divorce decree provides that matters relating to property division are reserved for future consideration and judicial disposition, the divorce proceedings are bifurcated. In such a case, when the subsequent proceedings divide marital property, including civil service retirement annuity benefits, and provide for a survivor annuity in the manner required by 5 U.S.C. § 8341(h)(1) and the pertinent OPM regulations, there is no conflict with 5 U.S.C. § 8341(h)(4). The reason is that there is no "modification" of a § 8341(h)(1) decree. That is because there is one, and only one, decree that divides marital property. *See Love*, 962 F.2d at 1011 ("An initial court order dividing marital property, such as the orders in this case, does not change, alter or limit the terms or effect of the previously entered decree of divorce, which dissolved the marriage. The initial property order does not change, alter or limit anything."). On the other hand, a decree that divides marital property, including retirement benefits, without expressly providing for, or reserving disposition of, a survivor annuity cannot be altered after the employee's death by a court order that purports to award such an annuity. Such a court order runs afoul of the provisions of § 8341(h)(4) because it constitutes a prohibited modification of the original decree. It is a prohibited modification of the original decree because it alters the terms of the original decree (by adding something—a survivor annuity—to those terms), and because it comes "after the . . . death of the employee" and "involves" a survivor annuity under 5 U.S.C. § 8341(h). *See Hokanson* 122 F.3d at 1047.

In this case, the 1996 decree did not meet the requirements of 5 U.S.C. § 8341(h)(1) and OPM's regulations for the express provision of a survivor annuity. The 1996 decree divided certain items of marital property. At the same time, the court deferred a division of Mr. Vaccaro's "Civil Service Pension" and retained jurisdiction over the Pension to ensure that Mr. Vaccaro paid Ms. Vaccaro her monthly "spousal support" of $300. The court characterized Ms. Vaccaro's monthly payment as "her share of the community interest in the retirement." Thus, it is clear that, in the words of the statute, a survivor annuity was not "expressly provided for" in the terms of the 1996 decree. 5 U.S.C. § 8341(h)(1).

The 1997 order changed the 1996 decree. It did so because it added a survivor annuity to a decree that (i) divided various specified items of marital property; (ii) provided for a monthly payment of a portion of Mr. Vaccaro's retirement annuity; (iii) deferred division of the retirement annuity and retained jurisdiction over it in order to ensure that Mr. Vaccaro kept up his monthly payments to Ms. Vaccaro; and (iv) made no mention of a survivor annuity. The 1997 order was ineffective as a matter of law under 5 U.S.C. § 8341(h)(4) because it modified the 1996 decree after Mr. Vaccaro's death by providing a survivor annuity when the 1996 decree made no mention of such an annuity. Accordingly, OPM did not err in rejecting Ms. Vaccaro's argument that she was entitled to a survivor annuity based upon the 1997 order.

### III.

We turn now to Ms. Vaccaro's second argument on appeal. Within two years after the date of their divorce, Mr. Vaccaro could have elected to have Ms. Vaccaro receive a survivor annuity as his former spouse. *See* 5 U.S.C. § 8339(j)(3). In addition, OPM was required to provide Mr. Vaccaro with notice of that election right. *See Vallee v. Office of Pers. Mgmt.*, 58 F.3d 613, 614 (Fed.Cir.1995).

The Vaccaros were divorced in August of 1996. In October of that year, OPM sent Mr. Vaccaro a notice stating that,

because of his divorce, he would now be receiving the full amount of his retirement annuity every month.[7] In December of 1996, OPM sent Mr. Vaccaro a form identified as Standard Form ("SF") 2808, entitled "Designation of Beneficiary." There is no evidence in the record, however, that between the date of his divorce and the date of his death, OPM sent Mr. Vaccaro notice of his election rights under § 8339(j)(3). Consequently, the administrative judge found that OPM had "failed to show by preponderant evidence that [Mr.] Vaccaro received notice of his election rights." *Vaccaro I,* slip op. at 7. The administrative judge noted, however, that Ms. Vaccaro "never argued that [Mr.] Vaccaro was unaware of his election rights." *Id.* Rather, Ms. Vaccaro testified that Mr. Vaccaro received SF–2808, and that he intended to elect a survivor annuity for her, but was too ill to do so in a timely fashion. The administrative judge stated that, under the circumstances, Ms. Vaccaro was required to establish by a preponderance of the evidence that Mr. Vaccaro intended to provide a survivor annuity for her and would have done so but for the lack of notice. *See Vallee,* 58 F.3d at 615–16. Following a hearing, the administrative judge ruled that Ms. Vaccaro had failed to carry that burden. Although the administrative judge determined that SF–2808 could not be used to designate a survivor benefit, she concluded that Mr. Vaccaro's belief that the form could be used for such a purpose, coupled with his failure to make an application, negated any evidence of intent to provide a survivor annuity for Ms. Vaccaro. The administrative judge stated: "The appellant testified that she and Vaccaro believed that the SF–2808 was the proper form for election of survivor annuity benefits. Nevertheless, between the date of his receipt of such form in December 1996, until his March 7, 1997 death, Vaccaro never completed SF–2808, which he believed would award the appellant a survivor annuity." *Vaccaro I,* slip op. at 8. The administrative judge also relied on the testimony of Carl Potter, Mr. Vaccaro's neighbor, that in the months before his death, Mr. Vaccaro was more lucid and rational than he had ever been before.[8]

On appeal, Ms. Vaccaro contends that the administrative judge's finding that there was insufficient evidence that Mr. Vaccaro intended to provide a survivor annuity for her is not supported by substantial evidence. She argues that, while her hearing testimony may indicate that she believed that SF–2808 could be used to elect the survivor benefit, it does not indicate that Mr. Vaccaro understood that the form could be used for the election. However, the administrative judge's interpretation of Ms. Vaccaro's testimony is reasonable in that her testimony indicated that she and Mr. Vaccaro understood that Mr. Vaccaro had to affirmatively act in order to preserve her right to survivor benefits.[9]

---

7. Mr. Vaccaro had been receiving a reduced monthly payment because, when he applied for retirement in 1981, he had elected a survivor annuity for Ms. Vaccaro.

8. Mr. Potter stated: "I don't know what happened to the man, but he was very lucid." Hr'g Tr. at 10. Mr. Potter also stated that "at the end [Mr. Vaccaro] was so lucid that he was a different person, I mean he was rational, kind, and I don't know if the doctors or, whatever, but he was just fine." *Id.*

9. Ms. Vaccaro testified as follows:

[W]e did discuss survivor's benefits because he said to me, "Hon," he said, "I didn't change that. I didn't request it. They said OPM sent me a letter stating because of our marital status they had changed it and sent me more money in my check," and he said, "Because of that, I had to do it because OPM told me because of the status in our marriage that it had to be changed." And he said, "But once I come home, we'll remarry and I'll take care of that," which he already did change the bank books. I've

In fact, the Vaccaros' daughter stated that in his last days, Mr. Vaccaro indicated that he wanted to "put [Ms. Vaccaro] back on his survival benefit [sic] to make sure my mother was taken care of." (Lintner Aff. at 1). In addition, the Vaccaros' son stated that his father "intended to place my mom back on his survival benefits however time wouldn't allow it." (Vaccaro Aff. at 1). While both statements indicate that Mr. Vaccaro may have intended for his wife to receive a survivor annuity, the statements also indicate that he understood that affirmative action on his part was required in order to accomplish that result. However, Mr. Vaccaro never acted upon that knowledge, even though he did take steps to place Ms. Vaccaro's name on his checking and savings accounts. Additionally, no medical evidence in the record substantiates Ms. Vaccaro's claim that Mr. Vaccaro was too ill to make the intended election. In fact, as noted, Carl Potter, the Vaccaro's neighbor, testified that Mr. Vaccaro was lucid and rational at the time of his death. Substantial evidence thus supports the decision of the administrative judge.

## CONCLUSION

For the foregoing reasons, the final decision of the Board sustaining OPM's denial of Ms. Vaccaro's application for a survivor annuity is *AFFIRMED.*

No costs.

DYK, Circuit Judge, dissenting.

I respectfully dissent. The majority opinion holds that state court divorce decrees, if they dispose of *any* marital property, cannot effectively reserve for future decision the disposition of federal survivor annuities. This approach is inconsistent with this court's decision in *Newman v. Love,* 962 F.2d 1008 (Fed.Cir.1992), with

the language and purpose of the survivor annuity statute (5 U.S.C. § 8341(h)), and with federal preemption law.

In *Love,* the Office of Personnel and Management appealed two Board decisions concerning Ms. Love and Ms. Penn, and this court consolidated the cases for appeal. *Love,* 962 F.2d at 1009. In the case involving Ms. Love, an earlier state court order had dissolved her marriage to a federal retiree without making any disposition of survivor annuities. *Id.* at 1010. The divorce decree specifically "ordered that all matters relating to property division and alimony are hereby reserved by the court for future consideration and decision." Two subsequent state court orders, entered on the same date, approved a property settlement between the parties and provided for a survivor annuity upon the death of Mr. Love, respectively. *Id.* at 1010. In the case involving Ms. Penn, the initial court order dissolving the divorce "retired this matter [i.e., the divorce] . . ., except for the entry of such future orders as may be necessary concerning equitable distribution." The state court later entered an order dividing the parties' marital property and awarding a survivor annuity to Ms. Penn. We held that the subsequent state court orders in both cases awarding a survivor annuity to the former spouses were effective pursuant to 5 U.S.C. § 8341(h)(1) because the later orders were not a "modification" of the earlier court orders. *Id.* at 1011. The later court orders were not a modification of the earlier court orders because they did "not change, alter, or limit" the first order in each case. *Id.*

Here, as in *Love,* the initial court order made no disposition of the survivor annuity, but instead reserved resolution of the issue for the future. Thus this case is

still got his bank books. He put my name on his checking and his savings account.

Hr'g Tr. at 20.

controlled by *Love*. The 1997 order at issue on this appeal does not constitute a "modification" of the 1996 order, because it did not "change, alter, or limit" the first order with respect to the survivor annuity. *Love*, 962 F.2d at 1011. Nothing in *Love* suggests that the result turned on whether the original decrees made no disposition of any marital property (as in *Love*) or (as here) made a disposition of marital property other than the federal survivor annuity. Nor has the majority shown why such a rule would make sense.

Nothing in *Hokanson v. Office of Personnel Management*, 122 F.3d 1043 (Fed. Cir.1997), relied on extensively in the majority opinion, purported to change the decision in *Love*, nor could it do so. In *Hokanson*, the initial state court order precluded any award of a survivor annuity. *Id.* at 1044. The initial court order awarded Ms. Hokanson, "*as her portion of said civil service retirement benefits*, ... the sum of $556 per month." *Id.* at 1044–45 (emphasis added). It also stated that "[t]he balance of [the] civil service retirement benefits shall be paid to [Mr. Hokanson]." *Id.* at 1045 (first brackets added; second and third brackets in original). The initial order made no reservation of the survivor annuity issue. We held that a subsequent order awarding Ms. Hokanson a survivor annuity was a "modification" because the provision of a survivor annuity was inconsistent with the express terms of the initial order. *Id.* at 1048. This case is governed by *Love*, not *Hokanson*.

The decision today is also directly contrary to the language of the survivor annuity statute. Section 8341 provides that OPM must honor a state court order awarding a survivor annuity to a former spouse, except in one limited circumstance—where the order is a "modification" of a disposition of the survivor annuity in an earlier order. The statute provides in pertinent part that:

(h)(1) Subject to paragraphs (2) through (5) of this subsection, a former spouse of a deceased employee ... is entitled to a survivor annuity ... if and to the extent expressly provided for ... in the terms of any decree of divorce or annulment or any court order or court-approved property settlement incident to such decree.

. . . .

(4) For the purposes of this subchapter, a *modification* in a decree, order, agreement, or election referred to in paragraph (1) of this subsection *shall not be effective*—

(A) if such modification is made after the retirement or death of the employee or Member concerned, and

(B) *to the extent that such modification involves an annuity under this subsection.*

5 U.S.C. § 8341(h) (emphases added). It is clear from the language of the statute that a prohibited "modification" only exists "to the extent that such modification involves an annuity." If the original decree did not resolve the annuity question, a subsequent order providing for an annuity is not a modification that "involves an annuity." In this case, the initial order of August 9, 1996, made no disposition of the survivor annuity, either explicitly or implicitly. Thus the 1997 order cannot constitute a "modification" of the 1996 order "involv[ing] an annuity," and the statute requires OPM to honor the 1997 order by awarding Ms. Vaccaro the requested survivor annuity.

The most troubling aspect of today's decision is that it forces state divorce courts to vary their approach to the disposition of marital property when federal survivor annuities are involved. As the Chairman noted in his dissent at the Board, *Vaccaro v. Office of Personnel Management*, 85 M.S.P.R. 329, 332 (2000) (Chairman Erdreich, dissenting), it will of-

ten be the case that some of the marital property requires immediate disposition, for example, a house or a car, and that the disposition of other property, particularly property having only future value, such as a survivor annuity, is less urgent. Under today's majority decision, the state courts are precluded from deciding first things first. Instead, our decision requires them to always dispose of the federal survivor annuity in the first property decree or to forego the ordinary state prerogative of deciding the disposition of federal survivor annuity rights.

Nothing in the purpose of the statute or its legislative history requires such an intrusion. The overriding purpose of the statute was to protect former spouses. Prior to enactment of the Civil Service Retirement Spouse Equity Act of 1984, Pub.L. No. 98–615, 98 Stat. 3195, 3200–01 ("CSRSEA"), as codified at 5 U.S.C. § 8341 (1994), OPM would not honor a court order awarding a survivor annuity— payments that would be made after the death of the employee—to a former spouse of a federal employee. The report on CSRSEA by the Committee on Post Office and Civil Service indicates that the House of Representatives intended CSRSEA to address this "major gap" in existing law, *i.e.,* that "survivor benefits are voided if a marriage is dissolved." H.R.Rep. No. 98–1054, at 12 (1984), *reprinted in* 1984 U.S.C.C.A.N. 5540, 5542. The report discusses the hardships of divorced spouses lacking a survivor annuity, many of whom became impoverished once their former spouse died. *Id.* As discussed above, section 8341 addressed this problem by providing that OPM must honor a state court order awarding a survivor annuity to a former spouse unless the order is a "modification" of a disposition of the survivor annuity in an earlier order. 5 U.S.C. § 8341(h)(4).

The committee report indicates that the purpose of denying effect to a "modification" was to resolve any conflict between successive state court orders disposing of property by directing OPM to always honor the earliest dated order. H.R.Rep. No. 98–1054, at 15, *reprinted in* 1984 U.S.C.C.A.N. at 5545 ("In the event that more than one court order is filed with OPM and there is a conflict between the court orders, OPM will honor the earliest dated court order."). Thus, Congress made it unnecessary for OPM to choose between conflicting court orders disposing of the annuity. If there was a conflict between the court orders' disposition of annuity rights, the disposition in the earlier dated order always controlled. OPM faces no "choice of awards" problem where, as here, the first order made no disposition of survivor annuity. The committee report makes crystal clear that this is the rule. For example, the committee report discusses a later state court order in the context of *"establishing or otherwise modifying* that former spouse's rights to *survivor benefits."* H.R.Rep. No. 98–1054, at 14, *reprinted in* 1984 U.S.C.C.A.N. at 5545 (emphases added).

The committee further made clear that when there was no conflict between two court orders, *i.e.,* when the later order awarding a survivor annuity could be honored by OPM without negating any disposition of the survivor annuity in the earlier order, then, under § 8341(h)(1), OPM was required to honor both orders even if the first order *expressly* dealt with a portion of the survivor annuity. H.R.Rep. No. 98–1054, at 15, *reprinted in* 1984 U.S.C.C.A.N. at 5545 ("If there is no conflict between the court orders [each awarding a portion of the annuity to a former spouse] then OPM will honor each one that has been filed as long as the total of survivor annuities payable to the former

spouses does not exceed 55 percent of the employee's annuity.").

Thus, instead of implementing the overriding Congressional purpose—to protect former spouses—the majority fastens on a subsidiary purpose—the choice of awards problem—to deny the annuity here, even though the subsidiary purpose is not even implicated.

The majority decision is also inconsistent with the Supreme Court's established law concerning federal preemption of state law. Under today's decision, any reservation of the disposition of survivor annuities in a state court order denies the state court the power to award survivor annuities in a future decree. The effect of the federal statute is to preempt state law governing the division of marital property. Particularly in areas of historic state concern, such as the disposition of marital property in divorce proceedings, federal preemption of state law requires a showing of clear congressional intent to preempt. *See, e.g., Egelhoff v. Egelhoff,* 532 U.S. 141, 121 S.Ct. 1322, 1330, 149 L.Ed.2d 264 (2001) (discussing the presumption against preemption of state family law); *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) ("State family and family-property law must do 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden.") (quoting *United States v. Yazell,* 382 U.S. 341, 352, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966)). Such a clear congressional intent is entirely lacking here.

Because the 1997 court order here was not a modification of any previous court order with respect to the survivor annuity, and the majority's holding to the contrary is inconsistent with our decision in *Love,* with the language and purpose of the survivor annuity statute, and with federal preemption decisions, I respectfully dissent.[1]

---

1. The Merit Systems Protection Board below relied on a regulation adopted by OPM, 5 C.F.R. § 838.1004, for its finding that if the original decree disposed of any marital property, a second decree constitutes a modification and would not be given any effect. For the reasons stated in the text, this regulation is inconsistent with the statute and our case law. Indeed in *Love,* this court recognized that the OPM's predecessor regulation to 5 C.F.R. § 838.1004 conflicts with the plain meaning of the statute. 962 F.2d at 1011–12. Therefore, in *Love,* this court ignored the regulation. I do not understand the majority opinion to rely on the regulation in resolving this case.